PEOPLE ex rel. GARVEY v. PRENDERGAST, City Comptroller.

(Supreme Court, Appellate Division, First Department.    December 1, 1911.)

1. MANDAMUS (§ 77*)—OFFICES.

A municipal employé removed in violation of Civil Service Law (Consol. Laws 1909, c. 7) § 25, prohibiting removals on account of political opinions or affiliations, has no right to mandamus to compel his reinstatement.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 77.*]

2. MUNICIPAL CORPORATIONS (§§ 217, 218*) — CIVIL SERVICE — REMOVALS — GROUNDS.

Civil Service Law (Consol. Laws 1909, c. 7) § 25, providing that no recommendation or question under the chapter shall relate to the political opinions or affiliations of an employé, and that no appointment or removal "within the scope of the rules established as aforesaid" shall be in any manner affected by such opinions or affiliations, does not apply to positions in the exempt class.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§ 217, 218.*]

3. MUNICIPAL CORPORATIONS (§§ 217, 218*)—CIVIL SERVICE—"RULES ESTABLISHED AS AFORESAID."

The phrase "rules established as aforesaid," within Civil Service Law (Consol. Laws 1909, c. 7) § 25, providing that no appointment or removal within the "rules established as aforesaid" shall be affected by political opinions or affiliations, refers to the rules established by the preceding sections or to be established by the state or municipal civil service commission pursuant thereto.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§ 217, 218.*]

4. MUNICIPAL CORPORATIONS (§§ 217, 218*)—CIVIL SERVICE—"SCOPE."

The word "scope" primarily means a "mark" or "target," and hence "design," "aim," "purpose," or "intention," and as used in Civil Service Law (Consol. Laws 1909, c. 7) § 25, prohibiting appointments or removals from employment within the "scope" of established rules means "intent and purpose."

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§ 217, 218.*

For other definitions, see Words and Phrases, vol. 7, p. 6356.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

5. STATUTES (§ 189*)—CONSTRUCTION—GRAMMAR.

In interpreting a statute the grammatical construction may be changed to make the meaning plain.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. § 189.*]

Appeal from Trial Term, New York County.

Application by the People of the State of New York, on the relation of Peter J. Garvey, for mandamus against William A. Prendergast, Comptroller of the City of New York. From an order directing a peremptory writ and from an order refusing to set aside a verdict, defendant appeals. Reversed, and proceeding dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Clarence L. Barber, for appellant.

Alfred J. Talley, for respondent.

MILLER, J. [1, 2] The appellant took office as comptroller of the city of New York on January 1, 1910. At that time there were eight persons, including the relator, holding positions as deputy city paymasters, which positions were in the exempt class. The appellant removed the eight persons holding said positions and appointed eight others of his own selection. The relator claims that his removal was for political reasons, and therefore in violation of section 25 of the civil service law (Laws 1909, c. 15 [Consol Laws, c. 7]). A single question was submitted to the jury, to wit, "Was the removal of the relator in any manner affected or influenced by or because of his political opinions or affiliations?" to which the jury answered, "Yes."

Said section 25, so far as material, provides:

"No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of the rules established as aforesaid, shall be in any manner affected or influenced by such opinions or affiliations."

The section does not provide that a person, removed contrary to its provisions, shall be entitled to a writ of mandamus to compel his reinstatement. Section 21, which deals with the preference to be allowed honorably discharged soldiers, sailors, or marines, expressly provides that a refusal to allow the preference, provided for therein and in the next succeeding section, shall be deemed a misdemeanor, and that such honorably discharged soldier, sailor, or marine shall have a remedy for righting the wrong. The first sentence of the succeeding section 22 is as follows:

"Every person whose rights may be in any way prejudiced contrary to any of the provisions of this section shall be entitled to a writ of mandamus to remedy the wrong."

That section deals with two classes of removals: (1) The removal of a person who is an honorably discharged soldier, sailor, or marine, or who shall have served the term required by law in the volunteer fire department of any city, town, or village in the state, or who shall have

been a member thereof at the time of the disbandment of such volunteer fire department. (2) The removal, in every county of the state wholly included within the limits of a city but not comprising the whole of such city, of a regular clerk or head of a bureau, or of a person holding a position in the classified state civil service, subject to competitive examination. Removals of the first class can only be for incompetency or misconduct, shown after a hearing upon due notice upon stated charges, with the right to the employé or appointee to a review by writ of certiorari. Removals of the second class shall only be after the employé or appointee has been allowed an opportunity to make an explanation, and in every case of removal the true grounds thereof must be forthwith entered upon the records of the department and a copy filed with the state civil service commission. Section 1543 of the Greater New York Charter provides that:

"The heads of all departments and all borough presidents (except as otherwise specially provided) shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employés and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee."

Then follows the exception, relating to the removal of a regular clerk, head of a bureau, or person holding a position in the classified municipal civil service subject to a competitive examination, which is similar to the provision of the state civil service law, hereinbefore referred to.

The relator was not a veteran, a regular clerk, a head of a bureau, or a person holding a position in the classified state or municipal civil service, subject to competitive examination. The learned counsel for the respondent was asked upon the oral argument to refer the court to specific statutory authority for the maintenance of this proceeding; but he was unable to do so, and we have been unable to find any provision giving a person, removed in violation of section 25, the right to a writ of mandamus to compel his reinstatement. The care shown by the Legislature expressly to confer the right in the particular cases referred to and the omission of any such provision from section 25 shows a deliberate purpose not to reduce the civil service to a state of chaos by making the validity of every appointment or removal depend upon what a jury might say as to whether it was "in any manner affected or influenced" by the political opinions or affiliations of the person appointed or removed. Moreover, we are of the opinion that said section 25 has no application to positions in the exempt class.

[3] The words "office or employment within the scope of the rules established as aforesaid" require construction. The words "rules established as aforesaid" obviously refer to the rules established by the preceding sections or to be established by the state or municipal civil service commission, pursuant thereto. Section 6 prescribes the powers and duties of the state civil service commission, among others, "to prescribe, amend and enforce suitable rules and regulations for carrying into effect the provisions of this chapter and of section 9 of article 5 of the Constitution of the state of New York, as herein provided." Section 9 provides that the civil service of the state and

of each of its civil divisions and of cities shall be divided into an unclassified and a classified service, and it defines each. Secton 10 provides for rules for the classified service. Section 11 provides for the appointment of municipal civil service commissioners, who, among other things, are to prescribe, amend, and enforce rules for the classification of the classified service of the city. Section 12 provides that the classified service shall be divided into four classes: (1) Exempt class; (2) competitive class; (3) noncompetitive class; (4) the labor class in cities. Sections 13, 14, 17, and 18, respectively, define those classes. Section 13 provides that the exempt class shall include: (1) The deputies of principal executive officers authorized by law to act generally for and in place of their principals; (2) one secretary of each officer, board, and commission authorized by law to appoint a secretary; (3) one clerk, one deputy clerk, if authorized by law, of each court, one clerk of each elective judicial officer; (4) in this subdivision it is provided, among other things, that:

"There may be included in the exempt class all other subordinate offices for the filling of which competitive or noncompetitive examination may be found to be not practicable."

[4] The word "scope" primarily means a "mark" or "target," and hence "design," "aim," "purpose," or "intention." See Century Dictionary. The statute, then, may be construed to mean that no appointment or selection to or removal from an office or employment shall be in any manner, within the *intent and purpose* of the rules established as aforesaid, affected or influenced by such opinions or affiliations.

[5] I am aware that that not only construes particular words, but changes somewhat the grammatical construction of the sentence. But such a liberty is permissible, when the meaning is plain, and the section is to be construed with reference to the other provisions of the statute. If it applies to positions in the exempt class, it directs the principal executive officers not to be affected or influenced by political opinions or affiliations in the selection of deputies, authorized to act generally for and in their place, and of private secretaries who are to mantain the most confidential relations with them. Indeed, as an earlier section provides for the division of the civil service into a classified and an unclassified service, the section, literally construed, would apply to positions in the unclassified service and would direct that the appointments of heads of departments should not be influenced or affected by their political opinions or affiliations. Manifestly, such a construction was not intended and has never been adopted. In a government by parties, it is to be expected that the principal executive officers, the heads of departments, whether appointed or elected, and their deputies and secretaries, will be selected with some reference at least to the political opinions and affiliations of the appointees, and it is plain that the Legislature did not intend to direct otherwise. The purpose of creating an exempt class would be defeated if the motives of the appointing officer could be inquired into. The Legislature recognized that it was not practicable to prescribe rules for appointments to, or removals from, certain positions or to

determine the qualifications of candidates for such positions by examinations, competitive or otherwise, and so it provided for the creation of an exempt class, specifying certain positions to be included therein and leaving it to the civil service commission to include others. The use of the word "exempt" is significant of an intention that appointments to, or removals from, positions in that class should be exempt from restrictions or limitations, and, when the nature of the positions specifically included is considered, it appears reasonably plain that the purpose was to confer unrestricted authority and to fix unlimited responsibility for appointments to positions in that class upon the officer exercising the power of appointment.

Briefly, then, in so far as the question before us is involved, the scheme of the statute appears to have been as follows: (a) to divide the classified service into two classes: (1) A class concerning which it was not deemed practicable or advisable to prescribe rules and which was therefore called "exempt"; (2) a class, consisting of the competitive, noncompetitive, and labor classes, concerning which it was practicable to prescribe rules, governing removals and appointments, and to test by examinations the qualifications of persons to be appointed in all but the labor class. (b) With respect to the second class, to confer certain preferential rights upon specified classes of persons and to give them the remedy of the writ of mandamus for a violation of those rights. (c) To limit removals from certain specified positions, i. e., those in the competitive class and of a regular clerk or head of a bureau, by providing that the reasons for removal be stated and recorded, that an opportunity of making an explanation be afforded the person removed, and that a person removed in disregard of that provision be given the remedy of the writ of mandamus. (d) To guard the second class, in so far as practicable, from political influence by providing that appointments to, or removals from, positions in it should not be affected or influenced by the political opinions or affiliations of the persons appointed or removed. But in view of the manifest mischief likely to result from conferring the remedy of the writ of mandamus upon a person removed in violation of that provision, that remedy was withheld, and the said provision was intended to be directory only. We conclude, therefore, that said section 25 does not apply to positions in the exempt class, and that, even if it did, the relator would not be entitled to the remedy sought in this proceeding.

Our attention is called to the case of People ex rel. Gallup v. Williams, 139 App. Div. 355, 123 N. Y. Supp. 1098. It clearly appears from the opinion in that case that the position to which the relator sought to be restored was not in the exempt class. Moreover, the court in that case reversed a final order directing the issuance of a peremptory writ of mandamus. While that proceeding appears to have been instituted on the ground that the relator was removed for political reasons, it does not appear that the point, upon which we are deciding this case, was called to the attention of, or considered by, the court in that case.

The order should be reversed, with costs, and the proceedings dismissed, with $50 costs. All concur.