In the Matter of the Application of FRANK E. MERRIWEATHER, Petitioner, for a Mandamus Order against CARROLL J. ROBERTS, and Others, as Members of the Board of Health of the City of Buffalo, and Others, Defendants.

Supreme Court, Erie County, June 25, 1934.

*Gilbert J. Pedersen,* for the petitioner.

*George L. Grobe,* for the board of health.

HINCKLEY, J. This is an application for a peremptory order of mandamus. In so far as authoritative decisions are concerned it presents a very novel question. The novelty may be due to the effect of common belief that only such civil employees as are in the competitive class are protected against removal upon each change of the political affiliation of the appointing power.

The question here presented is whether a civil service employee in the non-competitive class who has been removed for political affiliations in violation of section 25 of the Civil Service Law is entitled to relief by order of mandamus.

Petitioner alleges that on December 1, 1930, he was appointed assistant bathhouse keeper of the city of Buffalo; that he was removed therefrom on April 1, 1934. Petitioner further alleges that the position occupied by him is included in that branch of the classified civil service known as the non-competitive class, and specifically so designated and named in that class in rule 20 for the classified civil service of the city of Buffalo. These allegations are not denied or controverted by the answering affidavit. Petitioner further alleges that he was removed from office because

of his political affiliation with the Republican party and that one Clarence Carter, an affiliate of the Democratic party, was appointed in his place. These latter allegations are specifically denied by the answering affidavit and if relief is proper then an alternative order of mandamus must issue. The respondent contends that mandamus will not lie in this instance.

The determination of that contention calls for a study and analysis of that statute known as the Civil Service Law. That enactment divides civil service into two major or primary parts, viz., the unclassified service and the classified service. The unclassified service is clearly enumerated in the statute and the classified service comprises all positions not included in the unclassified service. (Civil Service Law, § 9.)

The classified service has been declared to have two meanings, one primary and one secondary. " The requirement that there shall be classification in this sense [as to exempt, competitive, non-competitive and in cities the labor class] is fundamental and substantial, since such division is the basis for the administration of the system. (*People ex rel. Sims* v. *Collier*, 175 N. Y. 196, 200.) The secondary meaning of classification is the mere arrangement or enumeration in a schedule of titles of positions." (*Story* v. *Craig*, 231 N. Y. 33, at p. 37.)

The position with which we are concerned is not one enumerated in the unclassified service. We turn, therefore, to the classified service and find, as indicated in the above citation, it is subdivided into four classes designated the exempt class, the competitive class, the non-competitive class and in cities the labor class. (Civil Service Law, § 12.) It is apparent that the Legislature had in mind that all positions in any branch of the classified service should be subject to the rules enunciated by the Civil Service Commission. It is likewise apparent from the use of the word " exempt " and has been so held that the branch of the classified service so denominated should be free from regulations, rules or examination. For a like reason an occupant of a position in that class should be subject to removal for any reason or for no reason by the appointing officer (*People ex rel. Garvey* v. *Prendergast*, 148 App. Div. 129, at p. 134), except for the protection of section 22 of the Civil Service Law with which we are not here concerned. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363.)

There can be no serious claim but that all positions in the remaining classes of the classified service, to wit, the competitive, non-competitive and in cities the labor class, remain at all times subject to the general regulations and rules of the Civil Service Law and Commission and each class is subject to the particular rules and

regulations of its class. We are not concerned with the competitive class nor the labor class nor with their specific regulations or rules nor with their specified remedies.

The position in question in this application is in the non-competitive class and it is essential to determine what statutory provisions relate to that class and what judicial decisions have affected or have a bearing upon positions in that class. Constant emphasis must be placed upon the fact that positions in the non-competitive class are in the classified service.

" The non-competitive class shall include such positions as are not in the exempt class or the labor class and which it is impracticable to include in the competitive class. Appointments to positions in the non-competitive class shall be made after such non-competitive examination as is prescribed by the rules." (Civil Service Law, § 17.) Petitioner is neither a veteran nor is his position in the competitive class, so that we are not concerned with section 22 of the Civil Service Law nor the judicial decisions applicable thereto.

Our attention is focused on section 25 of the Civil Service Law which reads in part: " No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or *removal from an office or employment within the scope of the rules* established as aforesaid, shall be in any manner affected or influenced by such opinions or affiliations." A similar provision is contained in rule II, subdivision 2, of the Rules for Classified Civil Service and reads as follows: " No person *in the civil service* of the state or of any civil division or city thereof shall use his official authority or influence to coerce the political action of any person or body; or shall dismiss or *cause to be dismissed,* or make any attempt to procure the dismissal of, or in any manner change the official rank or compensation of, any person in such service, *because of his political opinions or affiliations.*"

The highest court of the State has settled once and we trust for all time that those holding public office or employment in the competitive class of the classified service are not subject to removal for political or partisan considerations and may seek relief by mandamus. (*People ex rel. Somerville* v. *Williams,* 217 N. Y. 40.) It is interesting to note in passing that it was deemed essential to change the grammatical construction of the statute in order to prevent giving equal protection to those persons in the exempt class of the classified service. (*People ex rel. Garvey* v. *Prendergast,* 148 App. Div. at p. 133.) A peculiar statement is found in the opinion of Judge WILLIAMS in *Matter of Hammond* v. *Ricker* (140 App. Div. 19, at p. 20), to the effect that an office in the non-

competitive class must originate in the exempt classification. Evidently this is a misprint as neither the statutes cited nor any other statutes do so provide.

There are certain striking similarities in the competitive and the non-competitive classes. Both are in the classified service. All positions in both competitive and non-competitive classes are under the jurisdiction of a civil service commission. No position in either class can be filled save after an examination. From such examinations in both classes must be eliminated all attempt to elicit information as to the political affiliations of an applicant and discrimination is forbidden because of political opinions or affiliations. (Rules for Classified Civil Service, rule II, subd. 3.)

The selection of public officials and employees by competitive examination results in no greater efficiency than selection after a non-competitive qualifying examination. Honor students in schools and colleges most successful in competitive examinations are not always better equipped to meet the practical problems of existence than others less successful but endowed with a gift of common sense. Selection of individuals by reason of character or peculiar fitness for the task to be accomplished will produce officials and employees of equal if not greater efficiency than appointment by competitive examination. The genesis of the non-competitive class lies in the impracticability of holding competitive examinations for certain positions. That not only bespeaks the similarity of the two classes but emphasizes and makes applicable the same sound reasons which demand for all positions in both classes the benign protection of section 25 of the Civil Service Law against " the semi-barbarous maxim that ' to the victors belong the spoils.' " (*Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173, at p. 177.)

Analysis and study of the purposes sought to be accomplished by the Civil Service Law carry us to the same conclusion. In the case of *People ex rel. Somerville* v. *Williams* (217 N. Y. at p. 42) we are referred by Judge SEABURY with his approval to the opinion of Judge PECKHAM in the case above cited of *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173) for the necessity for the enactment of the Civil Service Law and the purposes sought to be accomplished. The case last cited singularly enough originated in the city of Buffalo and was decided at a time when the law was deemed an experiment. On one side of the litigation was the practical politician, William F. Sheehan, and opposed to him was Ansley Wilcox, a portion of whose life was devoted to civil service reforms. Back of them looms the figure of our native son, Grover Cleveland, no small part of whose remarkable success lay in his genuine and seemingly sacrificial adherence to the best interests of the government service.

Humanity has not changed in the last forty years and the words of Judge PECKHAM may with profit be quoted anew. A casual perusal of the daily press will indicate the present condition in the nation, state and city. The condition of unemployment of today has but added to the " general scramble for office " which is " the accompaniment of every change of administration." It is still carried to such an extent that " the officers of the government have really not the time to spare for the discharge of the other duties pertaining to their office, because of the constant demand upon their time and attention made by office seekers and their supporters." The Civil Service Law has, as have all human laws, many inherent weaknesses and in its application is subject to many abuses. Yet its basic principles are now immovably grounded in public favor and esteem.

The question here involved is too great to be concerned with any past, present or future control of so-called political patronage by any one particular political party. The basic evil attacks every one who has appointing power regardless of his political affiliations. The principle here involved transcends any present temporary or provincial consideration.

Though we search every reason for and purpose of the Civil Service Law we will find none which distinguish between positions in the competitive and non-competitive class. On the contrary, the subsequent proof of the virtues of the underlying principles of civil service reform forbid its limitation to the competitive class. The trial court in the absence of authoritative decisions in the higher courts must seek its own pathway. Reason, logic and experience are its proper guides and they point unerringly to an affirmative answer to the question at issue. In view of the importance of that question, it is hoped that this case may be the medium for a final answer by the highest court available.

Mandamus is the only and appropriate remedy available for the petitioner. (*People ex rel. Somerville* v. *Williams*, 217 N. Y. 40.)

Motion for peremptory order denied and an alternative order may issue.