In the Matter of JOHN A. MEENAGH et al., Respondents, Impleaded with Others, against THOMAS E. DEWEY, as District Attorney of the County of New York, Appellant.

Argued April 24, 1941; decided July 29, 1941.

*William C. Chanler, Corporation Counsel* (*Robert H. Schaffer, Paxton Blair* and *Denis B. Sullivan* of counsel), for appellant. The determination in petitioners' favor upon the issue of fitness was predicated upon incompetent and inadmissible evidence. (*Matter of McNamara* v. *Holling*, 282 N. Y. 109.) The petitioners could not compel their transfer to such of the newly-created positions as were made exempt or non-competitive by action of the State Civil Service Commission approved by the Governor. With relation to exempt and non-competitive positions the appointing officer may not be deprived of the right to choose appointees upon the basis of his confidence in their integrity and competence. (*Matter of Neubeck* v. *Bard*, 275 N. Y. 43.)

*John C. McDermott* for respondents. The provisions of section 22 of the Civil Service Law (Cons. Laws, ch. 7) are applicable to veterans including those holding exempt positions unless they come within one of three exceptions. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363; *Matter of Byrnes* v. *Windels*, 265 N. Y. 403; *Matter of Mafera* v. *Pasta*, 265 N. Y. 552; *Matter of Kiernan* v. *Ingersoll*, 265 N. Y. 553; *Matter of Mylod* v. *Graves*, 274 N. Y. 381.)

LEHMAN, Ch. J. The appellant, Thomas E. Dewey, was elected District Attorney of New York County at the election held in November, 1937. Prior to that time, he had been serving as Special Prosecutor. Mr. Dewey's position as Special Prosecutor was a temporary position and the employees in his office were not in the competitive class of the Civil Service. To cover the expenses of Mr. Dewey's office as Special Prosecutor, and the salaries of his employees, during the year 1937, the sum of about $230,000 was appropriated. During the same year, the appropriation for the employees in the office of the District Attorney of the county

was approximately $715,000. Prosecution of cases previously within the jurisdiction of the Special Prosecutor became part of the work of the office of the District Attorney when Mr. Dewey, the Special Prosecutor, became District Attorney. No separate appropriation was made to cover the expenses of the prosecution of such cases for the year 1938. The appropriation for expenses of the District Attorney's office for that year was approximately $772,000, an increase of more than $56,000 over the amount appropriated for the expenses of the same office in 1937, yet the amount so appropriated for 1938 was more than $173,000 below the amount of the combined appropriations for the expenses of the District Attorney's office and for the expenses of the Special Prosecutor in 1937. Though after January 1, 1938, the work of the office of the Special Prosecutor became part of the work of the office of the District Attorney, yet for the performance of the combined work Mr. Dewey could not integrate into the staff of the District Attorney's office the members of the staff whom he had employed as Special Prosecutor, nor, out of the appropriations for 1938, pay the salaries previously paid to the employees of the District Attorney's office and to his own employees. Reorganization of the staff and redistribution of the work was necessary so that the work might be done without exceeding the appropriation.

Sixty employees then in the District Attorney's office had been appointed to positions under the title of process servers. Twelve of these positions had been placed in the exempt class by the Civil Service Commission and the holders of these positions had been appointed without examination. Forty-eight positions were in the competitive class and the holders of these positions had been appointed from eligible lists promulgated after competitive examination. In the reorganization of the staff of the District Attorney's office, the number of positions under the title of process server was reduced from sixty to twenty-five — the twelve exempt positions and twenty-three of the positions in the competitive class were abolished. At the same time new posi-

tions were created which were placed in either the exempt or the non-competitive class. Because of this reduction of the number of positions under the title of process server, from sixty to twenty-five, it became necessary to remove from the pay roll of the office or to transfer to other positions thirty-five process servers. Fourteen persons who had held positions as process servers, which were abolished, brought proceedings in the Supreme Court asking for an order of mandamus either peremptory or alternative, " directing the respondent to forthwith reinstate your petitioners to the place of process servers from which he has wrongfully removed them or to appoint your petitioners to the positions created by the respondent and taking the place of the positions heretofore held by your petitioners, * * * with all the salary, interests and emoluments due each of them from the date of his wrongful removal and discharge." All of the petitioners claimed that their positions were not abolished in good faith, and that Mr. Dewey merely transferred to newly created positions, with different titles, the duties which had formerly been attached to the positions which they occupied. Five of the petitioners were honorably discharged soldiers. Eight of the petitioners had held competitive positions, but were not honorably discharged soldiers. The fourteenth petitioner discontinued his proceedings by stipulation.

Section 22 of the Civil Service Law (Cons. Laws, ch. 7) provides, amongst other things, that " No person holding a position by appointment or employment in the state of New York, or in the several cities, counties, towns or villages thereof * * * who is an honorably discharged soldier * * * shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges. * * * If the position so held by any such honorably discharged soldier * * * shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier * * * shall not be discharged from the public service but shall be transferred to any branch of the said service for duty in such

position as he may be fitted to fill." The eight petitioners who are not honorably discharged veterans have no such right to be transferred to any other position which they could fill. They are entitled to be reinstated to their former positions only if the abolition of those positions and the creation of new positions was a subterfuge devised for the purpose of evading the provisions of the Constitution of the State and the provisions of the Civil Service Law, which are intended as assurance that appointments and promotions in the civil service of the State shall be made in accordance with merit and fitness, ascertained whenever practicable by competitive examination, and to give those appointed to positions in the civil service a right of tenure of office which may not be destroyed to make room for political or personal favorites of the head of the department. The five honorably discharged soldiers are given, by the statutes, rights not accorded to the others. When their positions are abolished for legitimate reasons, each may demand transfer to such vacant or newly created position " as he may be fitted to fill " within the meaning of the statute.

The court in this proceeding followed the procedure used upon applications for orders of mandamus before the present article 78 of the Civil Practice Act was adopted. After hearing the petition of the eight petitioners who were not veterans, the court held that the positions had been abolished, in good faith, to promote economy and efficiency of administration and that the eight petitioners who are not veterans and are not entitled, as such, to the rights conferred upon honorably discharged soldiers by section 22 of the Civil Service Law, have no right to any relief. The court, therefore, denied their petitions. At the same time the court granted the motion of the five veterans to the extent of directing that a trial should be had upon the following issue: " Within the purview of Sec. 22, sub. 1 of the Civil Service Law are the petitioners John A. Meenagh, George W. Friob, William J. Kissane, Nicholas D. Sucarato and Edward T. Coll fitted to fill any of the

new positions created in the office of the District Attorney on or after January 1, 1938? " The petitioners who are not veterans did not appeal from the order denying their application.

After trial of the issue so framed, the court found that:

" None of the petitioners was removed from his position for incompetency or misconduct.

" When the respondent abolished the positions of the petitioners, he created new positions under new designations as chief investigator, investigators, chief interviewer, interviewers, confidential clerk, confidential messengers and messengers.

" Prior to the first day of January, 1938, the petitioners above named had been performing work in the District Attorney's Office far beyond and not related to the title of process servers.

" Work performed by the new appointees of the respondent under new titles and designation as chief investigator, investigators, chief interviewer, interviewers, confidential clerk, confidential messengers and messengers, was work that the petitioners had formerly performed under their old titles of process servers.

" None of the petitioners was transferred by the respondent to any positions existing under or created by the respondent.

" The respondent was a person clothed with the power of appointment to make such transfers effective.

" None of the petitioners was given an opportunity or hearing by the respondent to ascertain whether or not he may be fitted to fill any position created by the respondent."

A final order was entered upon these findings which required the District Attorney to reinstate the petitioners and to " appoint them to the positions created by the respondent, leaving to the respondent's administrative discretion what position each shall occupy, together with compensation at the rate at which the said petitioners were employed as of the date of their unlawful removal, January 1st, 1938." The order was unanimously affirmed by the

Appellate Division and the District Attorney has appealed to this court by its permission.

The evidence established, and the court has found, that these petitioners, holding the position of process servers in the District Attorney's office, performed work far beyond and not related to the title of their positions. Other holders of positions with the same title also performed work not related to that title. The Civil Service Law provides that, " No person shall be appointed or employed under any title not appropriate to the duties to be performed." (Civil Service Law, § 14.) Twenty-five persons, not sixty, are required for the work of serving process of every form. There can, therefore, be little, if any, doubt that the District Attorney was obeying and not violating the Civil Service Law when he abolished thirty-five positions having the title of process server, for the incumbents of such positions could not properly be employed in work unrelated to that title. The order of the court denying the petitions of those holders of abolished positions who are not veterans, and formulating the issue to be tried upon petitions of the five veterans, constitutes an adjudication that the positions have been abolished for sufficient reason. That adjudication is not challenged now. The only question we consider upon this appeal is whether the petitioners are entitled to an order that the District Attorney shall restore them to a new position, leaving to the District Attorney's " administrative discretion what position each shall occupy."

The Civil Service Law was adopted to carry out the provisions of the Constitution of the State that, "Appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." (Formerly art. V, § 9; now art. V, § 6.) We have many times pointed out that the Legislature has no power to authorize appointment in any other manner and legislative statutes must be construed where possible in manner consistent with the mandate of the Constitution. The Constitution does

not grant to an honorably discharged soldier exemption from the requirement that merit and fitness must, in all cases, be ascertained by examination, if practicable, and the Constitution does not sanction exemption by the Legislature of any person from such examination, though other forms of test may completely demonstrate eminent merit and fitness. (*Matter of Neubeck* v. *Bard*, 275 N. Y. 43.) An honorably discharged soldier whose position has been abolished, though entitled to be transferred "to any branch of the [civil] service for duty in such position as he may be fitted to fill," is not entitled to transfer or appointment to such a position *unless, in manner authorized by the Constitution*, he has shown his fitness to fill the position. (*Matter of McNamara* v. *Holling*, 282 N. Y. 109.)

Private employers are free to choose their employees as they please. Usually they seek to ascertain the merit and fitness of an applicant for a vacant position by consideration of the applicant's previous experience and training and his proven ability in positions with similar duties. Private employers are free to reject objective tests of merit and fitness. Some may, indeed, find the unvarying and obtrusive efficiency of a particular employee irritating and may prefer an employee who works with less machine-like precision and efficiency but who has a more complaisant temperament. Not so heads of departments or officers vested with power to appoint or employ persons in the civil service, except where appointment or employment is in a position which has been placed in the exempt class by the Legislature, itself, or some other body to whom the power has been delegated.

The petitioners in this case were permitted to introduce at the hearing evidence of training and experience in private business before they were appointed as process servers and evidence of their satisfactory performance of duties not appropriate to the title of process server. The court, in its opinion, stated that such evidence was properly received as proof of their fitness to perform the duties of the positions to which they seek transfer, since the new positions were

placed in the non-competitive class. That, in our opinion, is error.

Positions which are not in the exempt class or the labor class may be placed in the " non-competitive class " only where it is impracticable to place them in the " competitive class." Again we point out here that fitness for any position in the classified civil service must be ascertained by competitive examination unless there has been determination that fitness and merit cannot be ascertained by competitive examination. Even when that has been determined, a position may not be placed in the exempt class " if it may practicably be placed in the  *  *  * non-competitive." Determination that a position shall be placed in the exempt class is permitted by the Constitution only where there is finding that no examination, " competitive or non-competitive, supplies a practicable test " of fitness for the position. In such case the appointing officer must be left free to decide fitness for the position in accordance with his unfettered discretion and without prescribed tests. Non-competitive examination is " an assurance that along with personal qualities or associations satisfactory to the appointing officer there shall also be the attainment of some standard of efficiency established as a minimum," and when a non-competitive examination is a practicable test by which such assurance can be had, then the position must be placed in the non-competitive class, though even then the appointing officer might " reject any on the list or all if their personal qualities or associations seem to render them ineligible." (*Matter of Ottinger* v. *Civil Service Commission*, 240 N. Y. 435, 442, 443.) We must test, in accordance with these principles, the relevancy and sufficiency of the evidence received in this case as proof that the petitioners are fitted to fill all or any of the new positions.

The provisions of section 22 of the Civil Service Law which prohibit removal of an honorably discharged soldier " except for incompetency or misconduct shown after a hearing upon due notice upon stated charges," limit the power of removal of the head of the department, even

where a veteran has been appointed to and occupies an exempt position from which others could be removed at the pleasure of the department head. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363; *Matter of Mafera* v. *Pasta*, 265 N. Y. 552; *Matter of Kiernan* v. *Ingersoll*, 265 N. Y. 553; *Matter of Mylod* v. *Graves*, 274 N. Y. 381, 383.) The provisions of the Constitution that new appointments to office must be made in accordance with merit and fitness, to be ascertained if practicable by competitive examination, are not violated by a statutory command that the incumbent of a position appointed without examination to a position in the exempt class shall have security of tenure, regardless of whether the position remains in the exempt class or by reclassification is placed in the competitive class. The right conferred by section 22 of the Civil Service Law upon honorably discharged soldiers in the public service to be " transferred to any branch of the said [public] service for duty in such position as he may be fitted to fill " is not a right to preference in appointment to a different position but, like the right conferred by the same section to a hearing upon charges before removal from the public service, is rather a right of tenure under an appointment, valid when made, and does not violate the provisions of the Constitution in respect to appointment and promotion in the civil service. The right to be transferred accorded by statute to honorably discharged soldiers is not in terms, or by implication, limited to discharged soldiers who have been appointed after competitive examination. Honorably discharged soldiers who have been appointed without examination to positions in the exempt class enjoy the same right.

Even so, the transfer may be made only " for duty in such position · *as he may be fitted to fill*," and the question still remains how fitness to fill the position may be shown. Though the mandate of the Constitution in respect to appointments in the civil service and the provisions of the Civil Service Law designed to enforce the mandate of the Constitution are not violated or disregarded by obedience to the statutory command that an honorably discharged soldier

who has been lawfully appointed to a position which has been abolished shall be transferred to duty in another position *which he is fitted to fill,* yet the statute may not be construed or given effect in manner that would constrain a transfer through which the purpose of the mandate of the Constitution might be thwarted. A person appointed to a position in the civil service may lawfully perform only the duties appropriate to the title of that position — duties for which his fitness has been ascertained in manner defined by the Constitution. That is true whether the person so appointed is employed in such duties in the position to which he was originally appointed or when assigned to duty in a different position. As we have said, the legislative command that a veteran appointed to one position, must, after abolition of that position, be transferred to duty in another position would be beyond the power of the Legislature if such transfer constituted an appointment to a new position and it is plain that the transfer would be, in effect, a new appointment if by such transfer the incumbent could be employed in duties which he could not lawfully perform under the original position. No person can be said to be fitted to fill a position who has not previously been appointed in manner permitted by the Constitution to a position which would permit him lawfully to perform the duties which he might be called upon to perform in the new position. Thus an honorably discharged soldier, appointed to a position under the title of process server, regardless of whether such position was in the exempt or in the competitive class, has no right to be transferred to a new position which involves duties different from those appropriate to the title of process server, which the honorably discharged soldier could lawfully perform under his original appointment.

Evidence that the incumbent of a position is fitted by experience and training to perform duties not appropriate to the title of his position, would not provide ground for sanctioning the employment of the incumbent in such duties. Otherwise the mandate that fitness must be shown, if practicable, by examination would be futile. Similar

evidence, though supplemented by evidence that in the position to which he was appointed the incumbent had satisfactorily performed duties not appropriate to the title of his position can furnish no ground for sanction of continued employment in such duties when a person appointed to one position is assigned to another position, nor may it be accepted as proof of fitness to fill a position which might call for performance of such duties. A person is fitted to fill a position when he is capable of performing the duties of the position — not otherwise. To prove a right to be transferred to duty in another position, there must be evidence of appointment to a position whether in the competitive, non-competitive or exempt class, which entitled the incumbent to be employed in the same duties as those which are attached to the position to which transfer is sought.

Even such evidence may not be sufficient when transfer to duty in a position in the exempt or non-competitive class is sought. A person may be transferred to or assigned to perform the duties of a position which is subject to competitive examination if he has " served with fidelity for at least three years in a similar position." (Civil Service Law, § 14.) The statute in effect when transfer was demanded so provided, but see amendment contained in chapter 630 of the Laws of 1941. Evidence of appointment and satisfactory service in a similar position was by statute made sufficient proof of fitness for the position to which transfer is sought even though the original appointment may have been made without competitive examination. Where fitness can be determined by examination based on objective standards, evidence of satisfactory service in similar position does not lack probative force. That is not true, however, where fitness depends on elusive personal qualities. The classification of twelve positions in the District Attorney's office with the title of process server in the exempt class, and forty-eight positions with the same title in the competitive class, was invalid and prohibited by the Constitution unless there was prior determination that it was not

practicable to show fitness for positions in the exempt class by examination. (*Matter of Ottinger* v. *Civil Service Commission, supra.*) All persons appointed to such positions in both the exempt and the competitive class could lawfully be employed to perform any duty appropriate to the title of the position and none could be employed in any other duties. Nevertheless, the classification is valid only upon the assumption that a process server might be called upon to perform some duties which call for qualities for which no examination, either competitive or non-competitive, would be a practicable test. We cannot hold that an honorably discharged soldier appointed to a competitive position would be entitled, under section 22, to be transferred to a vacant position with the same title in the exempt class if the competitive position is abolished, without at the same time holding that there was no basis in fact for the original classification. If fitness for the exempt positions can be shown through appointment to a competitive position after competitive examination, then the same competitive examination should have been required for appointment to both positions. We may assume that the classification of twelve of the original sixty positions of process server in the exempt class, while forty-eight of the positions with that title were classified in the competitive class, was made because the Commission found that for the performance of some duties a few men were needed with special qualities for which an examination would furnish no practicable test. Ability to perform the routine duties of a process server would not prove fitness to perform those duties which, in the opinion of the Commission, could be performed only by men selected by the District Attorney because of their personal qualities.

Classification of the new positions in the non-competitive and exempt classes was made by rule or regulation of the State Civil Service Commission, approved by the Governor of the State. Such rule or regulation may be set aside by the courts, if at all, only in appropriate proceeding upon proof that the rule or regulation is without rational basis

and wholly arbitrary. In this proceeding its validity cannot be questioned. It constitutes a determination conclusive in this proceeding, that fitness to fill the position involves personal qualities or associations which must be determined by the head of the department because no examination, competitive or otherwise, would be a practicable test of such qualities. The Legislature has no power to determine that an examination would not be a practicable test of fitness for any positions in a particular bureau or department without consideration of the duties of each position. (*Matter of Ottinger* v. *Civil Service Commission, supra.*) Similarly the Legislature cannot reasonably have intended, assuming that it had such power, to decree that every honorably discharged soldier whose position has been abolished may show fitness for any other position, though in the exempt or non-competitive class, where he seeks assignment to duty, by evidence of training or experience before appointment in the civil service or of faithful service in a position in the public service with similar duties. The confidential character of a position, the importance of personal qualities which cannot be measured by any objective standards, which dictate the classification of a position in the exempt or non-competitive class, also dictate the conclusion that fitness for the position which would entitle the holder of another position to be transferred to duty in the non-competitive or exempt position, can be determined only by the head of the department who has been given " large liberty of choice in selecting those who shall fill the positions."

The final order should be reversed and a new trial ordered of the issue formulated in the interlocutory order. At such new trial the court must decide whether the petitioners, or any of them, by evidence that they have satisfactorily performed duties appropriate to the position of process server to which they have been appointed, have shown fitness to fill any vacant positions in the competitive class. The order must specify the particular position which a particular petitioner has shown he is fitted to fill. Even

such evidence would not show fitness for positions classified in the non-competitive or exempt class because it is not practicable to determine the necessary qualifications for such position by objective tests.

The orders should be reversed and a new trial ordered of the issue formulated in the interlocutory order, without costs. (See 286 N. Y. 707.)

FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur; LOUGHRAN, J., dissents from so much of the decision as determines that section 22 of the Civil Service Law authorizes the transfer of a veteran from a position in the exempt class to a position in the competitive class.

Orders reversed, etc.