Shientag, J.
(dissenting). On the papers before the court it would appear that for some time prior to 1941, Dr. John E. Conboy served as one of nine members of the medical staff of the Board of Education receiving a salary of $4,000 per annum. His position was that of Examining Physician, Grade 4. The fact that the other eight had different titles and were appointed pursuant to examinations held under the auspices of the Board of Education rather than of the Civil Service Commission is of no legal significance, the duties and the salaries of all being substantially the same. Dr. Conboy was the senior in point of service. On the retirement of the chief medical examiner in 1941, Dr. Conboy was designated as acting chief medical examiner at a salary of $4,000 per annum, the same salary he had theretofore been receiving in his position as Examining Physician, Grade 4.
Tn March, 1942, the Board of Education adopted a resolution dealing with the organization of its medical staff which provided, among other things, that “ There shall be a Chief Medical Examiner who, subject to the direction and supervision of the Superintendent of Schools, shall supervise the Medical Staff, together with all matters under the jurisdiction *719 of said Staff, and all persons employed therein that “ Appli-j cants for the position of Chief Medical Examiner shall meet all the qualifications that may be required by the Municipal Civil Service Commission with the added qualification that the applicant shall be recognized in the medical profession in' the City and State of New York as outstanding as a general internist and he shall not be a psychiatrist or other specialist and that the appointment of chief medical examiner “ shall be made from names certified by the Municipal Civil Service Commission from an eligible list established by a competitive examination. ’ ’
■ In November, 1942, the Board of Education adopted a detailed statement of the duties and the qualifications for the position of chief medical examiner and forwarded the statement to the Municipal Civil Service Commission “ for consideration in connection with the application of the Board of Education for the holding of an open competitive examination for said position ”. At the same time, the Board of Education suggested that no examination for the position be held during the period of the war emergency.
In the meantime, Dr. Conboy who had been continuing as acting chief medical examiner at a salary of $4,000 per annum was, on November 25, 1942, appointed by the Board of Education provisionally to the position of chief medical examiner at a salary of $7,500 per annum (afterwards increased to $7,850) and at the same time was granted a leave of absence without pay from his civil service position of Examining Physician, Grade 4.
In April, 1946, the Municipal Civil Service Commission advised the Board of Education that a competitive examination for the position would soon have to be held. Thereafter in July, 1946, the Board of Education adopted a resolution purporting to do three things concurrently: (1) to abolish the position of chief medical examiner as of June 1, 1946, (2) to reassign Dr. Conboy to his former position of Examining Physician, Grade 4, also effective as of June 1, 1946, and (3) to assign him “ in Charge of the Medical Staff ” at the same salary, $7,500 a year, that he had been receiving as acting chief medical examiner.
The record would indicate that the duties and functions performed by Dr. Conboy since November, 1942, pertain to the position of chief medical examiner and not to the position of Examining Physician, Grade 4; and that Dr. Conboy is now performing the identical duties and functions which he *720 had been performing while serving provisionally as acting chief medical examiner from. November, 1942, to July, 1946. The position now filled by Dr. Conboy is much higher in rank and in authority than that of Examining Physician, Grade 4; it involves higher responsibilities and duties, and the salary is almost twice as much.
The nature of a position is to be determined by its duties, functions and responsibilities and not merely by its title (Matter of Byrnes v. Windels, 265 N. Y. 403, 406).
A competitive test for the position of chief medical examiner is practical and had been contemplated and agreed upon between the Board of Education and the Civil Service Commission. However, the action taken by the Board of Education in connection with this position plainly constitutes a design and ah attempt on its part to avoid the requirements of the Constitution and the Civil Service Law.
Instead of going through with the plans which had been formulated and virtually agreed upon between the Board of Education and the Civil Service Commission, what the Board of Education did was simply this: In order to avoid a competitive test or a promotion examination for the position of chief medical examiner, it retraced all of the steps it had previously taken, purported to abolish the position altogether and bestowed upon the provisional appointee under his former title, all the duties, responsibilities and emoluments of chief medical examiner except the name. This indicates a design and attempt on the part of the Board of Education to avoid the requirements of the Constitution and of the Civil Service Law (Matter of Wipfler v. Klebes, 284 N. Y. 248; Matter of Meenagh v. Dewey, 286 N. Y. 292, 298; Hale v. Worstell, 185 N. Y. 247).
Enough has been set forth to indicate that the proceeding should not have been dismissed as a matter of law. At the very least there should be a trial of the issue as to whether or not the acts and conduct of the Board of Education were designed to avoid and to frustrate the requirements of the Constitution and of the Civil Service Law. On such a trial, Dr. Conboy, while perhaps not a necessary party, is a proper party and should be joined as a defendant.
Peck, P. J., Glennon and Dore, JJ., concur with Van Voob* his, J.; Shientaq, J., dissents in opinion.
Order ¿ffirmed, with $20 costs and disbursements.