[867 NE2d 389, 835 NYS2d 538]

In the Matter of City of Long Beach, Respondent, v Civil Service Employees Association, Inc.—Long Beach Unit, Appellant.

Argued March 22, 2007; decided May 1, 2007

**POINTS OF COUNSEL**

*Law Offices of Louis D. Strober, Jr., LLC,* Garden City (*Louis D. Strober, Jr.,* of counsel), for appellant. I. The petition to stay arbitration was improperly granted. (*Matter of Alden Cent. School Dist. v Watson,* 56 AD2d 713; *Matter of Sprinzen [Nomberg],* 46 NY2d 623; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774.) II. Arbitration is the preferred method of resolving disputes under collective bargaining agreements. (*Matter of Alden Cent. School Dist. v Watson,* 56 AD2d 713; *County of Ontario v Faculty Assn. of Community Coll. of Finger Lakes,* 56 AD2d 189; *Matter of Board of Educ. of W. Irondequoit Cent. School Dist. v West Irondequoit Teachers Assn.,* 55 AD2d 1037; *Belmont Cent. School Dist. v Belmont Teachers Assn.,* 51 AD2d 653; *Matter of Kepp v Springville-Griffith Inst. Cent. School Dist.,* 55 AD2d 1033, 43 NY2d 767; *Matter of South Colonie Cent. School Dist. v Longo,* 55 AD2d 753, 43 NY2d 136; *New York Inst. of Technology v Council of Metropolitan & Old Westbury Chs., Am. Assn. of Univ. Professors,* 47 AD2d 659; *Susquehanna Val. Cent. School Dist. at Conklin v Susquehanna Val. Teachers' Assn.,* 46 AD2d 104, 37 NY2d 705; *Matter of Silverman [Benmor Coats],* 61 NY2d 299; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90 NY2d 364.) III. The two-part test to determine whether a public employee's grievance is subject to arbitration has been met in this matter. (*Matter of Van Scoy [Holder],* 265 AD2d 806; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.],* 99 NY2d 273; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO,* 99 NY2d 1; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.,* 1 NY3d 72; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90

NY2d 364; *Matter of Board of Educ., Potsdam Cent. School Dist. [Kmack]*, 216 AD2d 718; *Matter of County of Sullivan [Sullivan County Empls. Assn.]*, 235 AD2d 748.) IV. The employer voluntarily negotiated job security (tenure) provisions thereby limiting its own discretion in layoff situations. (*Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364; *Matter of Heslin v City of Cohoes*, 74 AD2d 393; *Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 746; *Matter of Marcellus Cent. School Dist. [Marcellus School Off. Personnel Assn.]*, 177 AD2d 935; *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268; *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v Bellmore-Merrick United Secondary Teachers*, 39 NY2d 167; *Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington*, 33 NY2d 229; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122; *Matter of Burke v Bowen*, 40 NY2d 264.)

*Corey E. Klein, Corporation Counsel,* Long Beach, for respondent. I. The State Constitution and Civil Service Law mandate appointments be made by merit and fitness. (*Palmer v Board of Educ. of Union Free School Dist. No. 2, Town of Geddes*, 276 NY 222; *McGowan v Burstein*, 71 NY2d 729; *Matter of Civil Serv. Empls. Assn., Westchester Ch., Local 860 v Town of Harrison*, 48 NY2d 66; *Matter of Giordano v Henry*, 44 AD2d 835; *Amico v Erie County Legislature*, 36 AD2d 415; *Matter of Montero v Lum*, 68 NY2d 253; *McGowan v Burstein*, 71 NY2d 729; *Matter of Sikich v Hughes*, 274 App Div 675.) II. Provisional employees are not entitled to rights as tenured employees. (*Koso v Greene*, 260 NY 491; *Matter of Preddice v Callanan*, 69 NY2d 812; *Edelman v Israel*, 208 AD2d 1104; *Matter of Giordano v Henry*, 44 AD2d 835; *Matter of Vacca v Town of Southeast*, 206 AD2d 433; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774.) III. Public policy precludes arbitration. (*Matter of Blackburne [Governor's Off. of Empl. Relations]*, 87 NY2d 660; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273; *Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, 49 NY2d 732; *Board of Educ., Great Neck Union Free School Dist. v Areman*, 41 NY2d 527;

*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774; *Matter of County of Fulton [Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO, CSEA Local 818, Fulton County Gen. Unit]*, 14 AD3d 771; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 268 AD2d 523; *Matter of Buffalo Police Benevolent Assn. [City of Buffalo]*, 4 NY3d 660; *Matter of Sprinzen [Nomberg]*, 46 NY2d 623.)

**OPINION OF THE COURT**

PIGOTT, J.

Petitioner City of Long Beach (City) brought this CPLR article 75 proceeding to stay two arbitrations demanded by respondent Civil Service Employees Association, Inc.—Long Beach Unit (CSEA) on behalf of several terminated provisional employees. The central issue in this case is whether the subject claims are arbitrable under the terms of a Collective Bargaining Agreement (CBA) between the parties. We conclude that they are not, and therefore affirm the Appellate Division order granting the City's petition and permanently staying arbitration.

I.

In March 2004, the New York State Civil Service Commission issued a "Report on Merit System Administration for the City of Long Beach Civil Service Commission" that, among other things, admonished the City for its poor control over provisional appointments within the civil service system. In particular, the report noted that a number of competitive class positions had been improperly filled with and retained by provisional employees; at least one for as long as 19 years.

In response to the report, the City appointed a new Civil Service Commission that directed the City to address the issue. The City wrote to several employees occupying provisional appointments and informed them that, based upon a review of its records, there was reason to believe that they were serving in a provisional capacity beyond the statutorily prescribed time period. The employees were provided with an opportunity to meet with City officials to discuss their employment status prior to any final employment action. Following these meetings, the City determined that the continued employment of certain provisional employees violated applicable civil service laws and regulations and terminated them.

CSEA filed grievances on behalf of the terminated provisional employees, alleging that pursuant to the terms of the CBA, the

employees were "tenured" and entitled to be rehired to another position. In its demands for arbitration, CSEA relied on the following tenure provisions found in article VI of the CBA:

"Section 6-1.0—Definition of Tenure

"Employees with one (1) year of service in the annual employment of the City, regardless of classification, will be deemed tenured employees. This period of tenure is to be computed retroactively and only employees enumerated in Section 2-1.0 of this Agreement shall be deemed non-tenured.

"Section 6-1.1—Rights of Tenured Employees

"All tenured employees will be protected from separation from employment with the City for any reason other than (a) voluntary withdrawal; (b) dismissal for disciplinary reasons after a hearing pursuant to Section 75 of the Civil Service Law; (c) provisional employees in the competitive class will be protected by tenure with the exception that their employment may be terminated pursuant to Civil Service Law should it be necessary pursuant to Civil Service Law to appoint a qualified candidate from a Civil Service eligible list to their position. In that event, the displaced provisional employee will be transferred by the City to another position in the City for which he/she qualifies, should such a position be open. A position will be deemed open if it was vacated within six (6) months of a tenured provisional employee's displacement by a candidate from an eligible list certified by the Civil Service Commission."

The City brought this action seeking to stay arbitration on public policy grounds. CSEA answered and cross-moved to compel arbitration.

Supreme Court granted the City's petition, denied CSEA's cross motion and permanently stayed arbitration. The court held that the contractual provisions for grievance and arbitration are not enforceable due to the provisional status of the employees. The Appellate Division affirmed the judgment, holding that "[b]ecause the provisions of the parties' collective bargaining agreement upon which [CSEA] relies have the effect of limiting the [City's] ability to discharge provisional employees, those provisions are against public policy and unenforceable as a mat-

ter of law" (29 AD3d 789, 790 [2d Dept 2006]). This Court granted leave.

## II.

As a general rule, "public policy in this State favors arbitral resolution of public sector labor disputes" (*Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90 NY2d 364, 372 [1997]). We have repeatedly held, however, that a dispute is not arbitrable when the subject matter of the dispute violates a statute, decisional law or public policy (*see e.g. Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563 [2006]; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO,* 95 NY2d 273 [2000]). In this case, the subject dispute is not arbitrable because granting the relief sought on behalf of the provisional employees under the so-called "tenure" provisions of the CBA would violate the Civil Service Law and public policy.

Our State Constitution mandates that civil service appointments and promotions "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive" (NY Const, art V, § 6). "The purpose of this provision was to replace the spoils system with a system of merit selection and to protect the public as well as the individual employee" (*Matter of Montero v Lum,* 68 NY2d 253, 258 [1986]). This constitutional mandate "may not be blinked or avoided" (*Matter of Board of Educ. of City of N.Y. v Nyquist,* 31 NY2d 468, 472 [1973]). Even in instances where a competitive examination is not "practicable," appointments to classified civil service positions outside the exempt and labor classes may be made only "after such non-competitive examination as is prescribed by the state civil service department or municipal commission having jurisdiction" (Civil Service Law § 42 [1]).

"Although the constitutional merit and fitness provision has been recognized as 'self-executing,' the Legislature has enacted a number of statutes to implement the constitutional merit and fitness and competitive examination requirements" (*Buffalo Bd. of Educ.,* 90 NY2d at 374 [citation omitted]). With respect to provisional appointments, the Civil Service Law authorizes such appointments only when there is no eligible list available for filling a vacancy in a competitive class, and then only for a maximum period of nine months (*see* Civil Service Law § 65 [1],

[2]). Once a provisional employee has been in a position for one month, the City *must* hold a civil service examination (*see* Civil Service Law § 65 [2]). Furthermore, any provisional appointment to a position must end within two months of the establishment of an appropriate eligible list, with only a narrowly defined exception applicable when termination would "disrupt or impair essential public services" (*see* Civil Service Law § 65 [3]), a provision not applicable here. Further, a provisional employee may be terminated "at any time without charges preferred, a statement of reasons given or a hearing held" (*Matter of Preddice v Callanan*, 69 NY2d 812, 814 [1987]). The statutory scheme contained in section 65 by its very terms prohibits any right of tenure to provisional employees. Properly construed, the Civil Service Law renders the provisions of the CBA upon which CSEA relies meaningless.

We have long held that appointments made pursuant to Civil Service Law § 65 carry no expectation nor right of tenure (*see Montero*, 68 NY2d 253 [1986]; *Matter of Hilsenrad v Miller*, 284 NY 445 [1940]; *Koso v Greene*, 260 NY 491 [1933]). Provisional employees,

> "though in a sense holding positions in the competitive class, are, for reasons of necessity, exempt from the civil service requirements for appointment; and similarly, so long as they hold such positions, they are entitled to none of the advantages secured by period of tenure under the [Civil Service Law]" (*Koso*, 260 NY at 494).

Such appointments "are mere stop-gaps, exceptions of necessity to the general rules with respect to the filling of such positions" and "[w]hile such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment" (*id.* at 495).

CSEA relies on those portions of the CBA which provide that a provisional appointee is considered a tenured employee after one year of service. The Civil Service Law, however, clearly sets a time limitation on provisional appointments and that period is nine months. The City therefore cannot agree to provide superior rights to provisional employees holding positions beyond that statutory time period. Because the provisions under the CBA are unenforceable as a matter of law, we need not concern ourselves with the particular relief requested by CSEA,

i.e. whether the provisional employees may be rehired to noncompetitive or competitive positions. A provisional employee cannot be entitled to any right of continued employment under the terms of this CBA, regardless of the nature of the requested position.

Policy considerations warrant strict compliance by employers with the time limitations imposed under the Civil Service Law. Such limitations are necessary to ensure adherence to the constitutional preference for merit selection. As illustrated in this case, an employer may sometimes abuse its authority to make provisional appointments and retain provisional employees far beyond their statutory purpose. In doing so, the employer fails to meet its obligation to render a competitive examination and create an eligible list within one month of a provisional appointment. Allowing parties to enter into agreements that give tenure rights to provisional employees who have served beyond the statutory time limit would only perpetuate this harm. The failure to administer timely examinations prevents the identification and hiring of qualified candidates from eligible lists, as required by the Civil Service Law, and misleads provisional appointees into having expectations of continued employment beyond that permitted by law.

We therefore conclude that the terms of the CBA that afford tenure rights to provisional employees after one year of service are contrary to statute and decisional law and therefore any relief pursuant to those terms may not be granted by an arbitrator. Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE (dissenting in part). In March 2004, the Civil Service Commission, having reviewed the civil service employment practices of the City of Long Beach, recommended that the City cease to rely on provisional appointments to fill a number of its civil service provisions, and instead, as far as practicable, make appointments based on competitive examination.

This case concerns the period following the issuance of the Commission's report, when the City moved toward implementing its recommendations. In particular, what is at issue here are provisions of a collective bargaining agreement (CBA) negotiated more than 30 years ago between the City and the CSEA, dealing with "tenure" provisions for provisional employees.

I agree that, as an arbitrator may not rely on the portion of the CBA that purports to grant tenure to provisional employees

after one year of service (section 6.1-0), or on the section that prohibits termination until and unless the City appoints from an eligible list (section 6-1.1 [c]), a stay should be granted with regard to arbitration of section 6.1-0 and the first part of section 6-1.1. I conclude, however, that the second component of the bargained-for section 6-1.1 (c)—that a displaced provisional worker will be transferred into an open position for which he or she is qualified—is arbitrable.

Maria Almonte was employed by the City in a provisional capacity as a bus dispatcher from 1989 to June 30, 2004. Prior to serving as a dispatcher, she was employed by the City of Long Beach in the noncompetitive position of bus driver from 1985 to 1989. Ms. Almonte served the City in these two positions for close to 20 years. After being notified that she would be terminated due to her status as a provisional worker serving beyond the statutory period, she requested that, pursuant to section 6-1.1 (c) of the CBA, she be given a vacant bus driver position for which she was qualified; she had previously served in the bus driver position and held a valid driver's license. The City refused her request and hired someone else the day after her termination as dispatcher became effective.

On June 4, 2004, Ms. Almonte filed a grievance with the City pursuant to article X of the CBA, which sets forth procedures for resolution of any dispute concerning the "interpretation or application of express terms of the Agreement" (section 10-1.5), and provides that any dispute not settled in step one or two of the grievance procedure may be submitted to arbitration by either party (section 10-1.4). Her grievance claimed that she was "wrongfully terminated as per CSEA CBA," and that she "should be reinstated as a Bus Driver." The CSEA initiated a class action grievance on behalf of provisional employees terminated in violation of the CBA, joined Ms. Almonte as a petitioner, and on June 22, 2004, filed two demands for arbitration. The second demand, addressing Ms. Almonte's particular request for relief, stated that "grievant should be afforded the right to be placed in a position she is qualified for, if a vacancy exists. There is a Bus Driver vacancy available on a June 7 job posting that she is qualified for. Grievant should be slotted into that vacancy." Supreme Court granted the City a stay of arbitration and the Appellate Division affirmed.

For the reasons that follow, I disagree with the majority's conclusion that we need not concern ourselves with the specific relief requested. Ms. Almonte was entitled to have her grievance submitted to arbitration in accordance with the CBA.

Initially, although the grievance cites to section 6.1-1, we are not prohibited from analyzing the request for placement, a request that relies on the second component of section 6.1-1 (c) independent of the first. An interpretation of the placement relief requested by Ms. Almonte as separable from the purported grant of "tenure" otherwise included in the provision gives meaning to the intent of the parties to the extent permitted by the Civil Service Law (*see, e.g. Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, 778 [1976] [upholding bargained-for procedural protections for probationary employees although finding provision granting tenure unenforceable]).

Implicit in the Civil Service Law is the conclusion that, for purposes of the CBA, a position may be "open" only if it is noncompetitive, or if a different competitive position is available for which there is no eligible list. As acknowledged by the parties, where an eligible list does exist, the position would be filled pursuant to the mandatory appointment provisions and the one-in-three requirement of the Civil Service Law (*see* Civil Service Law §§ 65, 61; CBA § 6.1-1).

Accordingly, placement of a terminated provisional employee into an open position would not disrupt a merit-based appointment. It would only acknowledge a bargained-for preference in favor of a provisional employee within a field of candidates qualified for a noncompetitive position, or within a competitive position for which there were no eligible candidates (*see, e.g. Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 81 [2003] [upholding award that "did not force the Board to hire or select a *nonqualified* candidate for a teaching position"]; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 746 [1978] [a municipal employer may agree to give preference for filling of vacancies to certain individuals among applicants equally qualified for the position]).

The majority takes issue with granting a worker who has been provisionally employed for more than one year what it deems to be rights superior to those granted a provisional worker who is replaced by the City within a nine-month period as per statutory mandate. The Civil Service Law itself, however, does not prohibit the City and the CSEA from negotiating limited protections for provisional employees based on the length of time they have served the City. Any such prohibition

stems from the statute's requirement that provisional appointments be terminated after nine months (Civil Service Law § 65 [2]), from its failure to provide provisional employees the right to a hearing or to an appeal (*see* Civil Service Law §§ 75, 76), and from its merit-based system of appointment from eligible lists based on examination (*see* Civil Service Law § 65).

Ms. Almonte's placement in the bus driver position at issue does not conflict with any of the implicit statutory prohibitions. The City was free to terminate Ms. Almonte prior to the expiration of the nine-month period as required by statute and chose not to do so. In her demand for arbitration, she is not requesting review of her termination, nor does she ask for reinstatement in contravention of an eligible list. "Where an arbitrator may be able to fashion a remedy not in violation of public policy," the Court should not intervene (*see Matter of Committee of Interns & Residents [Dinkins]*, 86 NY2d 478, 484 [1995]).

Plainly, provisional employment cannot ripen into permanent appointment (*see Koso v Greene*, 260 NY 491, 495 [1933]). Provisional workers have no preferential rights of permanent employment or of "retention over those higher in eligibility" (*id.*; *see also Matter of Preddice v Callanan*, 69 NY2d 812, 813 [1987] [provisional workers have "no expectation of tenure and rights attendant thereto"]).

The placement requested here, however, is not tantamount to permitting a provisional appointment to ripen into permanency, or to granting a provisional employee rights equivalent to tenure. Ms. Almonte is not requesting reinstatement to her provisional position as bus dispatcher, for which she is admittedly not qualified. She is instead simply requesting placement in a separate noncompetitive position for which she is qualified. Upon placement, she would be subject to the mandatory probationary period preceding any permanent appointment (*see* 4 NYCRR 4.5 [a]), or subject to termination at any time if the placement were provisional. In either case, the City could terminate Ms. Almonte prior to the vesting of any rights afforded a permanent employee.

The cases concerning provisional appointments cited by the majority do not address the situation presented here: a provisional employee seeking placement in a noncompetitive position pursuant to a negotiated collective bargaining agreement. Rather, they involve employees seeking continuation or reinstatement to a competitive position under the Civil Service Law,

often ahead of candidates with greater eligibility (*see Preddice*, 69 NY2d 812 [provisional employee has no right to reinstatement or back pay notwithstanding jury verdict that he was discharged in bad faith]; *Matter of Montero v Lum*, 68 NY2d 253 [1986] [probationary period for permanent position began when employee passed civil service exam, not when he was appointed to temporary position]; *Matter of Hilsenrad v Miller*, 284 NY 445 [1940] [temporary appointment to permanent position did not become permanent upon five-month extension]; *Koso*, 260 NY 491 [1933] [term of preceding provisional appointment may not be counted toward length of permanent appointment for purpose of layoffs based on seniority within competitive position]). The clear requirement, evident in these cases, of merit-based selection within competitive positions where practicable need not be confused with a prohibition on agreements granting a limited preference based on seniority within noncompetitive positions. Significantly, not one of the cases cited involves a bargained-for agreement between sophisticated parties or under authority of the Taylor Law.

When there is no direct conflict with statutory or decisional law, this Court favors a policy of "noninterference" with the arbitration of legal disputes (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629 [1979]). Correlatively, we have allowed arbitrators "expansive power . . . to fashion fair determinations of the parties' rights and remedies" (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 7 [2002]). This policy of encouraging arbitration is even weightier when it comes to public employment, as not only does the Taylor Law require collective bargaining, but also "public policy in this State favors arbitral resolution of public sector labor disputes" (*Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364, 372 [1997]). In fact, we have noted that "arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself" (*Transport Workers*, 99 NY2d at 8, quoting *Steelworkers v Warrior & Gulf Nav. Co.*, 363 US 574, 578 [1960]), as labor arbitrators are uniquely qualified to resolve disputes due to their personal experience, knowledge and competence in the field.

Finally, the majority assumes that requiring the parties to abide by the provision they negotiated will provide a disincentive to the City to offer testing for competitive positions and to otherwise comply with the time limits set forth in section 65 of

the Civil Service Law. Not so. A permissible interpretation of the negotiated placement provision would merely place a terminated employee in an open noncompetitive position or in a competitive position for which a noneligible person could otherwise be appointed on a provisional basis. It would not fill a permanent competitive position that requires examination. The City can, and should, give tests and create eligible lists, as recommended by the Civil Service Commission. The fact that the section of the CBA at issue does not commence until after one year's service is similarly irrelevant. The City's apparent difficulty in limiting the length of its provisional appointments to the statutory nine-month period should not provide yet another policy reason to allow it to avoid a bargained-for provision, and to adversely affect the status of civil service employees relying in good faith on protections afforded them by the CBA.

The provision of the CBA at issue affords limited seniority protection to provisional employees like Maria Almonte who would, after long service, be left with no City employment at all. As we recently confirmed in *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807* (8 NY3d 513 [2007]), in a case (such as this one) where a lawful interpretation of a provision of the parties' negotiated agreement is possible, the Court's strong policy of promoting arbitration of public labor disputes requires that we allow the arbitration to proceed.

Judges GRAFFEO, READ, SMITH and JONES concur with Judge PIGOTT; Chief Judge KAYE dissents in part and votes to modify in a separate opinion in which Judge CIPARICK concurs.

Order affirmed, with costs.