# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 40
In the Matter of Teamsters Local
445,
  Respondent,
  v.
Town of Monroe,
  Appellant.

Brian D. Nugent, for appellant.
Louie D. Nikolaidis, for respondent.

GARCIA, J.:

Certain civil service positions are classified as "exempt" when the position is of a

confidential nature and requires personal qualities that cannot practicably be tested by an

examination.  Exempt class employees are therefore terminable at will.  In this case, the

parties entered into a collective bargaining agreement that purports to provide for-cause termination protection to certain exempt class employees. We hold the agreement unenforceable to the extent it grants such protections, and therefore this dispute over an exempt class employee's termination is not arbitrable.

I.

In 2012, respondent Town of Monroe (the Town) appointed a new secretary to the Town Planning Board (the employee), an exempt class civil service position (*see* Civil Service Law § 41 [1] [c]). Three years later, the Town entered a collective bargaining agreement (the CBA) with petitioner Teamsters Local 445 (the Union). Among other things, the CBA defined the bargaining unit to include the secretary to the Town Planning Board, permitted the Town to "terminate employees for just cause," prescribed the discipline and termination procedures set forth in Civil Service Law §§ 75 and 76 for most employees, including the secretary, and supplied grievance procedures that culminated in binding arbitration.

In 2017, the Town terminated the employee. The Union filed a grievance with the Town alleging violations of the CBA's just cause termination provision and the requirements of Civil Service Law § 75 made applicable to the employee by the CBA. The Town refused to address the Union's grievance, and the Union commenced this proceeding to compel the Town to arbitrate the dispute. Supreme Court denied the Town's motion to dismiss, concluding that neither law nor public policy prohibited the parties from bargaining tenure protections for an exempt employee, or precluded the employee from

grieving or arbitrating the termination (Sup Ct, Dutchess County, Sept. 28, 2017, Rosa, J., index No. 52247/17). The Appellate Division affirmed on the same basis (188 AD3d 896 [2d Dept 2020]). The Court held that "there is no statutory, constitutional, or public policy prohibition against arbitrating this dispute regarding the termination of an employee in an 'exempt class' under the Civil Service Law" (*id.* at 897). Judgment was subsequently entered in Supreme Court granting the Union's petition to compel arbitration (Sup Ct, Dutchess County, Jan. 21, 2022, Rosa, J., index No. 52247/17). We granted the Town leave to appeal (38 NY3d 1179 [2022]), and now reverse.

II.

"As a general rule, public policy in this State favors arbitral resolution of public sector labor disputes" (*Matter of City of Long Beach v Civ. Serv. Empls. Assn., Inc.–Long Beach Unit*, 8 NY3d 465, 470 [2007] [internal quotation marks omitted]). A policy favoring arbitration does not mean that every dispute is arbitrable. With respect to disputes between public employers and employees, we have established a two-step framework for determining arbitrability (*see Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* 42 NY2d 509, 513 [1977]). "[T]he test centers on two distinct inquiries as to the public parties' purported entry into the arbitral forum: may they do so and, if yes, did they do so" (*Matter of Board of Educ. of Watertown City School Dist. (Watertown Educ. Assn)*, 93 NY2d 132, 138 [1999]). "The first ('may-they-do-so') step calls for an examination, by the court, of the subject matter of the dispute" (*id.*). We have repeatedly held that a dispute is not arbitrable if granting the relief sought would violate a statute, decisional law, or public policy (*see Long Beach*, 8 NY3d at 470). We

hold that affording for-cause termination protection to an exempt class employee would do so, and that this dispute arising from the CBA's for-cause termination provision is therefore not arbitrable.

A.

The New York Constitution mandates that civil service appointments and promotions "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive" (NY Const, art V, § 6). The legislature implemented this constitutional mandate through the Civil Service Law, the present version of which the legislature enacted in 1909 and recodified in 1958 (*see* L 1909, ch 15; L 1958, ch 790). The statute divides state employees between the unclassified and classified services, and further divides the classified service into four classes: the exempt class, the labor class, the competitive class, and the non-competitive class (Civil Service Law § 40).

Non-exempt positions are subject to various merit and fitness requirements and are afforded statutory protections against removal and disciplinary action. For example, under Civil Service Law § 75, competitive class employees and certain non-competitive and labor class employees cannot be removed or subjected to any disciplinary penalty except for incompetency or misconduct shown after a hearing upon stated charges. In contrast, exempt class employees are generally not subject to—in other words, are exempt from— the examination requirements and tenure protections that attach to employment in the other classes. Exempt positions are authorized based on "the confidential nature of the position, the performance of duties which require the exercise of authority or discretion at a high

level . . . or the need for the appointee to have some expertise or personal qualities which cannot be measured by a competitive examination" (*Matter of Spence v New York State Dept. of Civ. Serv.*, 189 AD3d 1785, 1786 [3d Dept 2020]; *see also Grossman v Rankin*, 43 NY2d 493, 504, 508 [1977]).

It is not surprising then, given the criteria required to classify a position as exempt, that those employees have been understood to be terminable at will (*see Matter of Meenagh v Dewey*, 286 NY 292, 301 [1941] [observing that, like a private employer, state officers authorized to fill exempt class positions are "free to choose their employees as they please"]). The nature of the positions—mostly deputies and secretaries to political officers (*see* Civil Service Law § 41)—requires that the officer exercising the appointment and removal power possess largely "unrestricted authority and . . . unlimited responsibility for appointments to positions in that class" (*People ex rel. Garvey v Prendergast*, 148 App Div 129, 134 [1st Dept 1911]; *see also Problems Relating to Executive Administration and Powers*, 1938 Rep of NY Constitutional Convention Comm, vol 8 at 185 [defining the exempt class as "positions of a confidential or policy-forming nature, which are filled without examination and carry no security of tenure"]). At-will employment status allows elected officials and political appointees to hire their preferred officers, deputies, and secretaries in place of incumbent exempt class employees.

B.

Our cases demonstrate that some attributes of a statutorily-defined employment class may be immutable and non-bargainable. For example, in *Long Beach*, we held void a provision of a collective bargaining agreement that purported to confer tenure protection

upon provisional employees (*see* 8 NY3d at 470). We reasoned that such employees have "no expectation nor right to tenure," held that a city "cannot agree to provide superior rights to provisional employees holding positions beyond th[e] statutory time period," and accordingly denied the employees' motion to compel arbitration (*id.* at 471). Similarly, in *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.* (40 NY2d 774 [1976]), we held void a provision of a collective bargaining agreement that granted for-cause termination protection to a teacher upon completion of the required probationary period (*see id.* at 776). The Education Law unequivocally permitted the school board to deny tenure without cause, and accordingly the school board could not relinquish its authority and responsibility to make tenure decisions (*id.* at 777-778).

Applying those principles to this case, we hold that for-cause termination protections cannot be made applicable to an exempt class employee through a collective bargaining agreement. The statutory framework, the criteria for exempting positions, and the policy concerns underlying the exempt class's historical terminable-at-will status together compel this conclusion.

First, our result is consistent with the legislature's omission of exempt employees from the tenure protections set forth in Civil Service Law §§ 75 and 76. With the exception of certain veterans and volunteer firefighters, the legislature extended statutory safeguards against removal and disciplinary action only to employees in the competitive, non-competitive, and labor classes. The clear exclusion of the exempt class from the removal and disciplinary protection scheme indicates that exempt employees have "no expectation nor right" to such protection (*Long Beach*, 8 NY3d at 470).

Second, the Civil Service Law evinces the legislature's intent to closely guard exempt class positions. The statute designates only a handful of such positions, permits civil service commissions to classify positions as exempt only where examination is impractical, and requires a civil service commission to review each exempt position upon vacancy to determine "whether such position, as then constituted, is properly classified in the exempt class" (Civil Service Law § 41 [2]; *see also id.* § 20). The legislature's strict regulation of the exempt class suggests more than an intent to ensure that no position be misclassified as exempt—it demonstrates an intent that positions properly classified as exempt remain so unless the applicable statutory procedure for reclassification is followed. The CBA contravenes that intent by altering an essential attribute of an exempt class position: at-will terminability. Without it, an employee is not "exempt" as contemplated by the statute.

Finally, public policy weighs against enforcement of the CBA's termination protections. Considering the nature of positions classified as exempt, appointing officers must be free to "choose their employees as they please" (*Meenagh*, 286 NY at 301). A contrary result would require officers to continue to employ in the most sensitive positions employees who do not meet the officers' preferred qualifications (*id.*). Public policy generally prohibits an incumbent from binding successors in that manner (*cf. Matter of Karedes v Colella*, 100 NY2d 45, 50 [2003] ["Elected officials must be free to exercise legislative and governmental powers in accordance with their own discretion and ordinarily may not do so in a manner that limits the same discretionary right of their successors to

exercise those powers."]; *see also Matter of Martin v Hennessy*, 147 AD3d 800, 802 [3d Dept 1989]).

A dispute under a collective bargaining agreement is not arbitrable if granting the relief sought would violate a statute, decisional law, or public policy. The relief sought in this case would violate all three. The Town was therefore free to terminate the employee without cause, and the Union's challenge to the employee's termination is not arbitrable.[*]

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the petition to compel arbitration denied.

Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, and petition to compel arbitration denied. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.

Decided May 23, 2023

---

[*] We reject the Union's argument that the Town's sole remedy was to file a unit clarification petition with the New York State Public Employment Relations Board (*see* 4 NYCRR 201.2 [b]). No authority supports the contention that the Town was required to seek the employee's removal from the bargaining unit before refusing to arbitrate the grievance.