William CROFT, Plaintiff,

v.

VILLAGE OF NEWARK, Village of Newark Police Department, and Chief of Police David Christler in his Official and Individual Capacity, Defendants.

No. 09–CV–6567 EAW.

United States District Court, W.D. New York.

Signed Aug. 5, 2014.

361

Jon P. Getz, Muldoon and Getz, Rochester, NY, for Plaintiff.

Michael P. McClaren, Kevin T. O'Brien, Webster Szanyi, LLP, Buffalo, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

Plaintiff William Croft ("Officer Croft" or "Plaintiff"), a patrolman with defendant the Village of Newark Police Department (the "NPD"), sued Defendants alleging that he was denied promotions and other employment-related benefits as a result of his service in the National Guard, and retaliated against for asserting his legal rights, all in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq.

Defendants have filed a motion seeking summary judgment pursuant to Fed. R.Civ.P. 56 on the following grounds: (1) the NPD is an administrative arm of a municipality and is not subject to suit; (2) neither defendant Chief of Police David Christler ("Chief Christler") nor the NPD are employers under USERRA; (3) the claims against Chief Christler in his official capacity are redundant and an inefficient use of judicial resources; (4) Officer Croft cannot prove a USERRA violation by a preponderance of the evidence; and (5) Defendants can affirmatively establish that they would have made the same decisions regardless of Officer Croft's military status. (Dkt. 42–13). Officer Croft concedes that the NPD should be dismissed from the action but otherwise opposes the motion. (Dkt. 45–1). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### BACKGROUND

Officer Croft was hired by defendant the Village of Newark to work as a patrol officer in July 2006. (Dkt. 42–14 at ¶ 13; Dkt. 45–2 at ¶ 2). His start date was August 8, 2006. (Dkt. 45–2 at ¶ 2). He was laterally transferred from the Lyons Police Department, having served as a police officer since 1994. (Id. at ¶ 3).

Officer Croft also holds the rank of Major in the United States Armed Forces as a member of the National Guard. (Id. at ¶ 8). He previously served in the United States Army from November 1990 until February 1993. (Id. at ¶ 9). He was commissioned as an officer in 1998. (Id. at ¶ 9). His deployments include Operation Iraqi Freedom from February 2003 until May 2004, and Afghanistan from January 2010 until December 2010. (Id. at ¶ 11). Officer Croft submits that as a commissioned officer, he is under an obligation to obey all lawful orders of the National Guard, including any and all deployment orders. (Id. at ¶ 13).

At the time Officer Croft was hired, Richard Bogan was chief of the NPD. (Dkt. 42–9 at 7:2–8). Officer Croft claims that Chief Bogan was aware of Officer Croft's military obligations. (Dkt. 45–2 at ¶ 14). Officer Croft further alleges that he was asked "several questions" about his military service during his initial job interview, including the timing of any potential deployments. (Id. at ¶ 15).

In approximately May 2006, shortly before Officer Croft was hired by the NPD, the Village of Newark Board of Trustees (the "Village Board") decided to expand the number of sergeants in the NPD from four to five. (Dkt. 42–9 at 10:22–11:12). Chief Bogan did not support this action and wanted to maintain the number of sergeants at four. (Id. at 11:13–24). Despite Chief Bogan's recommendation, the Village Board provisionally appointed

James Thompson and Jay Warren as sergeants. (*Id.* at 10:12–12:9).

Officer Croft took a civil service exam in June 2007 for the open sergeant positions to which James Thompson and Jay Warren had been provisionally appointed. (Dkt. 42–8 at 31:3–5; Dkt. 42–9 at ¶ 15). Officer Croft scored an 81 on the exam and was first on the list of individuals who were eligible for the positions (i.e., the "Certificate of Eligibles"). (Dkt. 42–8 at 33:13–20). James Thompson and Jay Warren, who had been provisionally appointed as sergeants before Officer Croft became employed by the NPD, ranked number two and three on the Certificate of Eligibles with scores of 76 and 74, respectively. (Dkt. 42–10 at 9; Dkt. 45–2 at ¶ 28). The sergeant exam results were released in August 2007. (Dkt. 42–10 at 9; Dkt. 45–2 at ¶ 21). At or about the same time, Officer Croft was out of the region for two weeks attending a mandatory military school. (Dkt. 42–10 at 27; Dkt. 45–2 at ¶ 23).

Officer Croft believes that he was the most qualified for the open sergeant positions based on his score on the civil service exam and the combination of his training, experience, and education. (Dkt. 45–2 at ¶ 25). Despite this, he was not interviewed for the open positions. (*Id.* at ¶ 36). Instead, the Village Board permanently appointed James Thompson and Jay Warren as sergeants in August 2007. (Dkt. 42–14 at ¶ 19; Dkt. 45–2 at ¶ 28). Chief Bogan testified that he felt that individuals who were provisionally appointed to a position and who were reachable on the "Certificate of Eligibles" should be permanently appointed to the positions in order to prevent the NPD from looking indecisive. (Dkt. 42–9 at 13:24–14:18, 15:9–19).

Also in August 2007, an investigator position opened up at the NPD. (Dkt. 42–14 at ¶ 20; Dkt. 45–2 at ¶ 22). Jay Warren was provisionally promoted to investigator. (Dkt. 42–14 at ¶ 20; Dkt. 45–2 at ¶ 29). Chief Bogan testified that he recommended Sergeant Warren for the provisional appointment because Sergeant Warren was "exceptionally qualified for the position." (Dkt. 42–9 at 23:9–24:17).

From January 2008 until March 2008, Officer Croft was ordered to service as an instructor at the Officer Candidate School at Fort McClellan, Alabama, and as a result, he was away from the NPD during this time period. (Dkt. 42–10 at 29; Dkt. 45–2 at ¶ 32). After his return, Officer Croft took a civil service examination for the open investigator position in June 2008. (Dkt. 42–14 at ¶ 30; Dkt. 45–2 at ¶ 32). He again placed first on the Certificate of Eligibles. (Dkt. 42–10 at 11; Dkt. 45–2 at ¶ 32). Nevertheless, he was not interviewed for the investigator position. (Dkt. 45–2 at ¶ 34). Instead, Jay Warren was permanently promoted to the position of investigator in August 2008. (Dkt. 42–14 at ¶ 32; Dkt. 45–2 at ¶ 34). This allegedly occurred despite the fact that Officer Croft had more time working as a police officer, greater seniority in law enforcement, and more experience outside of law enforcement. (Dkt. 45–2 at ¶ 34).

In August 2008, after the provisional appointment of Jay Warren as investigator but before he was permanently appointed, Chief Christler became chief of the NPD. (Dkt. 42–9 at 24:18–24; Dkt. 42–11 at ¶ 1). Chief Christler formerly served in the United States Army, reaching the rank of sergeant. (Dkt. 42–7 at 27:6–11).

Officer Croft claims he was ordered to serve active military duty as an instructor at Officer Candidate School from June

2008 until September 28, 2008.[1] (Dkt. 45–2 at ¶ 35). Beginning October 1, 2008, he served a tour of duty at the Syracuse Military Entrance Processing Point. (Dkt. 42–10 at 41; Dkt. 45–2 at ¶ 36).

In August 2008,[2] Officer Croft spoke to Chief Christler and asked him when his interview for the open investigator position would be scheduled. (Dkt. 45–2 at ¶ 27). Chief Christler claims that during this conversation, Officer Croft told him that he "wouldn't go on military leave" if Chief Christler would make him an investigator. (Dkt. 42–7 at 29:8–12). Officer Croft disputes this as "nonsense," stating that he is a commissioned officer who is obligated to follow the orders he is given, that his deployments have all been at great personal and professional cost, and that he does not control his orders from the National Guard. (Dkt. 45–2 at ¶ 95). Officer Croft further alleges that Chief Christler told him during the August 2008 conversation that "in 32 years with the [s]tate [p]olice, [Chief Christler] never knew anyone who had ranked in the Guard and Reserve and in the [p]olice [d]epartment." (*Id.* at ¶ 37). Officer Croft understood this statement to mean that Chief Christler believed that Officer Croft could not be a good leader in the NPD because he was a commissioned officer in the National Guard. (*Id.* at ¶ 38).

Chief Christler created a memo to file dated August 15, 2008, purportedly memorializing his conversation with Officer Croft. (Dkt. 42–11 at 12). The memo indicated that Officer Croft, who at that time was on active duty with the National Guard, had expressed an interest in serving either as a sergeant or an investigator and had further stated that he would "come back to work" at the NPD if he was promoted to sergeant or investigator, but that he would otherwise concentrate his efforts on the National Guard. (*Id.*).. Chief Christler's memo stated that he explained to Officer Croft that it was "difficult to excel in two very demanding jobs," and that most troopers Chief Christler had known who advanced in rank in the National Guard had not excelled in the state police. (*Id.*). At his deposition, Chief Christler reiterated his belief that "those that excelled very high in the military and Reserves and Guard" were "unable to do that and policing" because "policing is very demanding." (Dkt. 42–7 at 29:2–7).

While deployed in late September or early October 2008, Officer Croft alleges he spoke to his union president, Aaron Dean, to discuss his willingness to work shifts for the NPD when available because the NPD was low on manpower. (Dkt. 45–2 at ¶ 39). Mr. Dean purportedly told Officer Croft that he should not bother making this offer because "the Mayor had said 'the Village' didn't want anything to do with anything with [Officer Croft's] name on it.'" (Dkt. 45–2 at ¶ 40).

Chief Christler further allegedly told Officer Croft during a conversation in October 2008, that he "wasn't the Board's favorite child right now." (*Id.* at ¶ 42). Chief Christler made a memo to file regarding this conversation in which he claimed that Officer Croft had complained

---

1. The military orders submitted by Defendants in support of their motion indicate this military duty actually lasted from August 14, 2008, to September 27, 2008. (Dkt. 42–10 at 38)

2. Officer Croft indicates that he was "between deployments" in August 2008 (Dkt. 45–2 at ¶ 27), but this is seemingly inconsistent with his earlier claim that he was serving as an instructor at Officer Candidate School from June 2008 until September 28, 2008. (Dkt. 45–2 at ¶ 35). Nevertheless, Defendants do not dispute that Chief Christler and Officer Croft met and had a conversation in August 2008.

about not being promoted to investigator and had tried to "intimidate" Chief Christler by stating that if the Village of Newark was found to have not promoted him due to his service in the National Guard, it could be fined up to $250,000. (Dkt. 42–11 at 45).

In November 2008, Officer Croft was served with a grand jury subpoena related to a case he had worked on at the NPD. (Dkt. 42–11 at ¶ 12; Dkt. 45–2 at ¶ 48). He asked to be compensated for this time and Chief Christler initially refused his request. He was later paid after enlisting support from his union. (Dkt. 42–14 at ¶ 37; Dkt. 45–2 at ¶ 48).

In December 2008, Officer Croft requested, pursuant to his union contract, that the Village pay for him to attend Penn State World Campus to obtain a bachelor's degree in criminal justice. (Dkt. 45–2 at ¶¶ 49–50). Officer Croft submits that Chief Christler denied this request and claimed that he had never received it. (*Id.* at ¶ 51). Officer Croft further contends that his request was denied in part because he was on military leave at the time. (*Id.* at ¶ 52). Officer Croft again had his union intervene. The Village of Newark eventually agreed to pay the tuition (Dkt. 42–11 at ¶ 17), but by that time Officer Croft claims that his personal and professional circumstances had changed and he was no longer in a position to attend. (Dkt. 45–2 at ¶ 53). It is undisputed that NPD Officer Kenneth Davis, who has no military experience, submitted a request for tuition reimbursement to seek his Master's degree at Keuka College at or about the same time Officer Croft submitted his request. (Dkt. 42–11 at ¶ 14; Dkt. 45–3 at 60:10–18). The Village Board denied Officer Davis's request, and Officer Croft and Officer Davis grieved the denial of their requests together. (Dkt. 42–11 at ¶¶ 14, 17; Dkt. 45–3 at 59:6–11, 60:10–61:7).

In March 2009, the Village of Newark posted a vacancy for a school resource officer ("SRO") position. (Dkt. 42–14 at ¶ 39; Dkt. 45–2 at ¶ 54). Officer Croft was purportedly the only applicant for the position. (Dkt. 45–2 at ¶ 56). Chief Christler allegedly went to at least two other officers in the department and specifically asked them to apply for this position. (*Id.* at ¶ 57). Chief Christler also allegedly told Investigator Gary Verstreet that he had decided to repost the position because he questioned Officer Croft's commitment due to his military obligations. (*Id.* at ¶ 63; Dkt. 45–3 at 83:2–9). Chief Christler states that the position was reposted because the initial posting did not contain information regarding the schedule for the SRO position. (Dkt. 42–11 at ¶ 21). Chief Christler reposted the SRO position on May 21, 2009. (*Id.*). Officer Croft claims that Chief Christler again tried to recruit other officers to apply for the SRO position. (Dkt. 45–2 at ¶ 67). Officer Croft reapplied for the SRO position and no other officers applied. (*Id.* at ¶ 68). Officer Croft was ultimately appointed as the SRO. (Dkt. 42–11 at ¶ 22; Dkt. 45–2 at ¶ 68).

Also in 2009, two sergeant positions opened up at the NPD. (Dkt. 42–11 at ¶ 23; Dkt. 45–2 at ¶ 73). Officer Croft took a civil service exam and was third on the Certificate of Eligibles. (Dkt. 45–2 at ¶¶ 71–72). He was interviewed for a sergeant position but was not offered the promotion. Instead, Officers Kenneth Davis and Michael Patton were made sergeants in November and December 2009, respectively. (Dkt. 42–10 at ¶ 11). Officer Croft claims that Chief Christler told him that he was not promoted because he "[hadn't] really been [there]" and "[wasn't] around enough" and that "[t]he only place [Officer Croft] had been was military duty." (*Id.* at ¶ 75; Dkt. 45–3 at 73:3–11).

Defendants claim that Officer Croft was not promoted because he was third on the Certificate of Eligibles. (Dkt. 42–14 at ¶ 46).

At some point in late 2010 (while Officer Croft was on military leave and deployed in Afghanistan), the SRO position was eliminated. (Dkt. 42–8 at 45:5–18). Defendants claim this was due to budgetary reasons (Dkt. 42–14 at ¶ 58), while Officer Croft contends that the position was mostly funded by other entities, (Dkt. 45–2 at ¶¶ 93–94).

Plaintiff commenced this lawsuit on November 10, 2009. (Dkt. 1). Defendants answered the complaint on January 8, 2010. (Dkt. 2). As of September 13, 2013, the parties had completed all discovery except expert discovery related to economic loss. (Dkt. 38). Defendants filed the instant motion for summary judgment on December 13, 2013. (Dkt. 42). This case was transferred to the undersigned on January 6, 2014. Plaintiff filed his opposition to the summary judgment motion on February 3, 2014, and Defendants filed their reply papers on February 25, 2014. (Dkt. 45, 48). Oral argument was held on April 15, 2014. (Dkt. 50).

## DISCUSSION

### I. Legal Framework for Summary Judgment on USERRA Claims

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trials.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ On a motion for summary judgment on a USERRA claim, the standard used is the two-part burden of proof allocation set forth by the Supreme Court in *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), for actions under the National Labor Relations Act. *See Gummo v. Vill. of Depew, N.Y.,* 75 F.3d 98, 106 (2d Cir.1996). Under this standard, the plaintiff "carries his burden of proving a [*prima facie*] case of discrimination by showing, by a preponderance of the evidence, that his protected status was 'a substantial or motivating factor in the adverse [employment] action'; but the employer may none-

theless escape liability by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status." *Id.* (quoting *Trans. Mgmt.,* 462 U.S. at 401, 103 S.Ct. 2469).

■ " 'The term "motivating factor" means that, if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations.' " *McDuffie v. Eli Lilly & Co.,* No. 04 Civ. 05995(LTS)(HBP), 2009 WL 857069, at *8 (S.D.N.Y. Mar. 31, 2009) (quoting *Robinson v. Morris Moore Chevrolet–Buick, Inc.,* 974 F.Supp. 571, 576 (E.D.Tex.1997)). Military status is a motivating factor "if [the defendant] relied on, took into account, considered, or conditioned its decision on [that status]." *Robinson,* 974 F.Supp. at 576.

## II. Claims against NPD

As a threshold matter, Defendants argue that all claims against the NPD must be dismissed because the NPD is merely an administrative arm of the Village of Newark and it is thus not a legal entity that can sue or be sued. (Dkt. 42–13 at 4 (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002))). Plaintiff concedes this point. (Dkt. 45–1 at 24). The Court agrees with the parties that the NPD is not a proper defendant in this case. Defendants' motion for summary judgment is granted as to all claims against the NPD.

## III. Claims against Chief Christler

### A. Status as an Employer for Purposes of USERRA

Defendants seek dismissal of all claims against Chief Christler on the basis that he is not an employer under USERRA. USERRA defines "employer" as:

> any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including—
>
> (i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities;
>
> (ii) the Federal Government;
>
> (iii) a State;
>
> (iv) any successor in interest to a person, institution, organization, or other entity referred to in this subparagraph; and
>
> (v) a person, institution, organization, or other entity that has denied initial employment in violation of section 4311.

38 U.S.C. § 4303(4)(A). Plaintiff contends that Chief Christler is "a person to whom the employer has ·delegated the performance of employment-related responsibilities," and is therefore properly considered Officer Croft's employer for purposes of USERRA.

Defendants rely upon *Morris–Hayes v. Board of Education of Chester Union Free School District,* 423 F.3d 153 (2d Cir.2005) in support of their argument that there is no individual liability under USERRA. In *Morris–Hayes,* the district court found that the individual defendants (members of a school board) who were accused of terminating a probationary school principal were not "employers" under USERRA, reasoning that New York Education Law § 3012(b) authorizes termination of probationary employees only by boards of education, not by the individual members or the superintendent of schools. *Id.* at 157–57; *see Morris–Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.,* 2004 U.S. Dist. LEXIS 30157, at *11 (S.D.N.Y. March 16, 2004). The district court then

permitted plaintiff to file an amended complaint asserting claims against the individual defendants under 42 U.S.C. § 1983. *Id.* at 157. The individual defendants moved for dismissal on the grounds of qualified immunity and the district court denied the motion. *Id.*

On interlocutory appeal, the Second Circuit Court of Appeals held that "USERRA is not a statute for which redress is available against the Individual Defendants under § 1983" and therefore dismissed the appeal on the basis that the issue of qualified immunity was moot. *Id.* at 159. This decision was based on the court's determination that USERRA provides a comprehensive remedial scheme and was intended to supplant, not complement § 1983 as to its subject matter. *Id.* at 160–61. The Second Circuit Court of Appeals did not discuss whether the district court's initial determination that the individual defendants were not "employers" under USERRA was correct.

Other courts directly considering the issue have held that individuals who have authority or input over hiring and firing or promotion are "employers" under USERRA. *See, e.g., Risner v. Ohio Dep't of Rehab. & Corr.,* 577 F.Supp.2d 953, 967 (N.D.Ohio 2008); *Brandsasse v. City of Suffolk, Va.,* 72 F.Supp.2d 608, 618 (E.D.Va.1999). Moreover, in *Baldwin v. City of Greensboro,* No. 1:09CV742, 2010 WL 3211055 (M.D.N.C. Aug. 12, 2010), *report and recommendation adopted in relevant part,* 2010 WL 9904879, at *1–2 (M.D.N.C. Oct. 15, 2010), the court expressly rejected an argument hat an individual had to have hiring or firing authority in order to be held liable as an "employer" under USERRA. *Id.* at *4. The *Baldwin* court denied a motion to dismiss because the individual defendants were alleged to have been in plaintiff's supervisory chain of command, were in-volved in preparing plaintiff's performance evaluations, were involved in plaintiff's daily supervision, and were involved in the events that ultimately caused plaintiffs termination. *Id.*

*Angiuoni v. Town of Billerica,* 999 F.Supp.2d 318, No. 11–11661–NMG, 2014 WL 494803 (D.Mass. Feb. 5, 2014), is also instructive. In *Angiuoni,* the court declined to dismiss USERRA claims against a police chief because he "[was] delegated the responsibility of placing Department employees on administrative leave and recommending them for termination even if the Town makes the final decision." *Id.* at 322, 2014 WL 494803 at *4.

USERRA's accompanying regulations also state that an employer includes "any person … that has control over employment opportunities…." 20 C.F.R. § 1002.5(d)(1). In addition, Plaintiff correctly points out that the United States Department of Labor has "decline[d] to adopt the position that individual supervisors and managers should be excluded from the regulatory definition of 'employer' under USERRA." *Uniformed Services Employment and Reemployment Rights Act of 1994, As Amended,* 70 Fed.Reg. 75,246–01 (Dec. 19, 2005) (codified at 20 C.F.R. Part 1002).

■ Here, resolving the disputed facts in the light most favorable to Plaintiff, a rational jury could determine that Chief Christler was Officer Croft's employer for purposes of USERRA. There is evidence in the record that Chief Christler was responsible for making promotional recommendations to the Village Board and that the Board followed his recommendations. (*See, e.g.,* Dkt. 42–7 at 11:19–12:6, 12:18–22). There is further evidence that Chief Christler was the individual responsible for selecting individuals to be interviewed for the vacant sergeant positions in 2009. (Dkt. 42–10 at ¶ 11). There is also evi-

dence in the record that the first time Officer Croft interviewed with the NPD, he was not hired because then-Chief of Police Bogan "did not recommend him for employment." (Dkt. 42–9 at 18:6–23). Although there is also evidence that the Village Board on some occasions did not follow the advice of the police chief (*see id.* at 11:6–12:25), this does not change the fact that a reasonable jury could find that, as police chief, Chief Christler had been delegated the employment-related responsibilities of recommending individuals for hiring and promotion. Under these circumstances, the Court cannot determine as a matter of law that Chief Christler is not an employer pursuant to USERRA. As a result, Defendants' motion for summary judgment on the ground that Chief Christler is not an employer under USERRA is denied.

## B. Official Capacity Claims

■ Defendants also argue that the claims against Chief Christler in his official capacity should be dismissed because they are redundant of the claims against the Village of Newark. The United States Supreme Court has explained the status of official-capacity suits as follows:

> Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotation marks and citations omitted) (emphasis in original). Here, Plaintiff's sole argument in favor of retaining the official capacity claims against Chief Christler is that some form of prospective relief against Chief Christler might be appropriate. (Dkt. 45–1 at 23–24). Plaintiff does not explain what the prospective relief might entail, what evidence would support the imposition of prospective relief, or why prospective relief would not properly be entered against the Village of Newark, as the real party in interest, rather than Chief Christler. Moreover, the amended complaint does not seek prospective relief against Chief Christler or any other defendant. (*See generally* Dkt. 13).

It is true that claims for prospective injunctive relief may be pursued against officers acting in their official capacities under some circumstances. *See, e.g., Andino v. Goord,* No. 06–CV–455A, 2008 WL 724209, at *2 (W.D.N.Y. Mar. 17, 2008). Yet, Plaintiff has not brought a claim for prospective relief (*see* Dkt. 13 at 14 (demanding judgment for damages, attorneys' fees, and interest, with no mention of prospective relief)), nor has Plaintiff identified any evidence in the record that would support an award of prospective relief as to Chief Christler in his official capacity. As a result, there is no basis for asserting claims against Chief Christler in his official capacity, and they are dismissed. *See generally Loadholt v. DOC,* No. 09–CV–553SC, 2009 WL 4230132, at *3–4 (W.D.N.Y. Nov. 24, 2009).

## IV. The Merits of Plaintiff's USERRA Claims

■ Defendants also contend that summary judgment is mandated in their favor because Plaintiff's USERRA claims fail on the merits. Plaintiff alleges that Defendants violated 38 U.S.C. § 4311(a) and (b). The first of these USERRA provisions states:

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). "Benefit of employment" is defined very broadly under US-ERRA as including "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)" and includes but is not limited to "awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). "Moreover, '[b]ecause USER-RA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.'" *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir.2005) (quoting *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312–13 (4th Cir.2001)).

█ USERRA also prohibits retaliation.[3] 38 U.S.C. § 4311(b) provides:

An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311(b). A service member claiming retaliation under § 4311(b) must show that he suffered a "materially adverse" employment action "such as termination, demotion accompanied by a loss of pay, or a material loss of benefits or responsibilities that significantly alters the terms [or] ... conditions of his employment." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 892 (7th Cir.2011) (quotation omitted).

In this case, Plaintiffs amended complaint alleges both direct discrimination in violation of 38 U.S.C. § 4311(a) and retaliation in violation of 38 U.S.C. § 4311(b). The Court will therefore consider each of these claims in turn.

## A. Plaintiff's Claims of Discrimination in Violation of 38 U.S.C. § 4311(a)

### 1. Plaintiff's *Prima Facie* Case

As set forth above, the Court must first consider whether a reasonable jury could conclude that Plaintiff has proven a *prima facie* case of discrimination by showing, by a preponderance of the evidence, that his protected military status was a motivating factor in an adverse employment action taken against him. *See Gummo*, 75 F.3d at 106. Here, a careful review of the

---

**3.** Defendants suggest without citation in their moving papers that there is no "separate provision of USERRA governing 'retaliation' claims." (Dkt. 42–13 at 8 n. 1). Case law and the statute say otherwise. The prohibition in 38 U.S.C. § 4311(b) governs retaliation, as acknowledged by numerous federal courts. *See, e.g., Gross v. PPG Indus., Inc.*, 636 F.3d 884, 892 (7th Cir.2011); *Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011); *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir.2007).

record demonstrates that Officer Croft has carried his initial burden as to most of his claims.

### a. Plaintiff's Promotion Claims Involving Chief Christler

The United States Supreme Court has expressly authorized USERRA claims in which a service member seeks to hold his employer liable for the animus of a supervisor, even though the supervisor did not make the ultimate employment decision. *Staub v. Proctor Hosp.,* 562 U.S. 411, 131 S.Ct. 1186, 1190, 179 L.Ed.2d 144 (2011). These types of cases are referred to as "cat's paw" cases after one of Aesop's fables. *Id.* at 1190 n. 1.

In *Staub,* the Supreme Court explained that because USERRA only requires that antimilitary animus be a "motivating factor" in the adverse employment action, "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194. This is true even if the ultimate decision-maker exercised independent judgment or conducted an independent investigation, if the independent judgment or independent investigation took into account the biased report of the supervisor. *Id.*

In *Angiuoni v. Town of Billerica,* 999 F.Supp.2d 318, No. Civ. A. 11–11661, 2014 WL 494803 (D.Mass. Feb. 5, 2014), the court denied a summary judgment motion where plaintiff (who was a police officer) submitted evidence that his direct supervisor provided a negative performance evaluation because he thought it was unfair that plaintiff would receive a preference under Massachusetts law if there were layoffs due to his status as a disabled veteran. *Id.* at 321–22, 2014 WL 494803 at *3. The court noted that although there

was no evidence that the town in general or the chief of police (both defendants) had antimilitary animus, there was an issue of fact as to whether the negative report was (1) motivated by antimilitary animus and (2) a proximate cause of plaintiff's discharge. *Id.*

■ Here, although Defendants claim that Plaintiff has not presented evidence tending to show that the Village Board (the ultimate decision-making body) was motivated by antimilitary animus, there is substantial evidence in the record to support the conclusion that Chief Christler took Plaintiff's military status into account when making his recommendations to the Village Board. *See Sheehan v. Dep't of Navy,* 240 F.3d 1009, 1014 (Fed.Cir.2001) ("Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.").

It is undisputed that Chief Christler told Officer Croft during an August 2008 conversation that in 32 years with the state police, Chief Christler "never knew anyone who had ranked in the Guard and Reserve and in the [p]olice [d]epartment." (Dkt. 45–2 at ¶ 37). Chief Christler created a memo to file dated August 15, 2008, memorializing his conversation with Officer Croft and stating that he explained to Officer Croft that it was "difficult to excel in two very demanding jobs," and that most troopers Chief Christler had known who advanced in rank in the National Guard had not excelled in the state police. (Dkt.

42-11 at 12). At his deposition, Chief Christler reiterated his belief that "those that excelled very high in the military and Reserves and Guard" were "unable to do that and policing" because "policing is very demanding." (Dkt. 42-7 at 29:2-7). These undisputed statements support Plaintiff's position that Chief Christler was resistant to promoting Plaintiff, at least in part, because of Plaintiff's military obligations.

Moreover, there is evidence in the record, albeit disputed by Defendants, that Chief Christler took active steps to prevent Plaintiff from becoming the SRO, including seeking out other candidates and reposting the position, because he questioned Officer Croft's commitment to the position due to his military obligations. (*See* Dkt. 45-2 at ¶¶ 56-57, 63; Dkt. 45-3 at 83:2-9). Although Plaintiff was ultimately promoted to SRO, this is relevant evidence of Chief Christler's attitude and beliefs regarding Plaintiff's military obligations. There is also evidence in the record that in April 2009, Chief Christler took steps to implement a policy that no employee of the NPD could enlist or accept a commission in a federal or state military reservist organization without informing the chief of police and obtaining permission and approval to do so. (Dkt. 45-2 at 24-25). Although the record does not indicate that this policy was actually put into place, it is relevant evidence of Chief Christler's general position regarding military obligations.

Furthermore, Plaintiff alleges that Chief Christler told him that he was not promoted to sergeant in 2009 because he "[hadn't] really been [there]" and "[wasn't] around enough" and that "[t]he only place [Officer Croft] had been was military duty." (Dkt. 45-2 at ¶ 75; Dkt. 45-3 at 73:3-11). Accepted as true, this statement is evidence that Chief Christler made his promotional

recommendations based, at least in part, on Officer Croft's military status. Although Defendants dispute this claim, these are the kinds of credibility determinations that are appropriately made by a jury, not by the Court.

During the oral argument of the instant motion, Defendants' counsel suggested that the Court could determine that Plaintiff was not credible based on a recording of a conversation between Plaintiff and Chief Christler. (Dkt. 42-6). According to Defendants, this conversation demonstrates conclusively that Chief Christler did not harbor antimilitary animus. The Court disagrees. The recording presents a myriad of evidentiary issues, including that fact that its quality is very poor and its content is largely unrelated to the issues in this case. While it is true that Chief Christler does not appear to have voiced any overtly antimilitary sentiments during the course of the recording, this cannot equate to a finding that Chief Christler did not express such sentiments on other occasions. Moreover, "antimilitary animus," in the context of USERRA, does not necessarily imply dislike for the military or its members. It can, as is arguably the case here, simply mean that the employer thought the plaintiff's military status negatively impacted his or her appropriateness for certain positions.

There is also evidence in the record from which a jury could find that Chief Christler's decision not to recommend Plaintiff for promotion played a role in the Village Board's decisions. Although there is evidence that the Village Board on occasion disregarded the recommendations of former-Chief Bogan (*see, e.g.,* Dkt. 42-10 at ¶ 5), there is no comparable evidence that the Village Board ever diverged from Chief Christler's recommendations. Indeed, the record indicates that: (1) in August 2008, Chief Christler recommended

that Jay Warren be appointed as permanent investigator and the Village Board accepted this recommendation; and (2) in 2009, Chief Christler recommended that Kenneth Davis and Michael Patton be appointed as sergeants, and the Village Board accepted these recommendations. (Dkt. 42–7 at 12:7–22; Dkt. 42–10 at ¶ 11).

A reasonable jury could conclude from the available evidence that Plaintiff's military status was a motivating factor in Chief Christler's decision not to recommend him for promotion and that the Village Board relied on these tainted recommendations in making the ultimate promotional decisions. As a result, Plaintiff has sufficiently established a *prima facie* case of discrimination as to the failure to promote him to investigator in 2008 and the failure to promote him to sergeant in 2009.

### b. Plaintiff's 2007 Promotion Claims

■ Although it is not as strong as his case regarding the 2008 and 2009 promotional decisions, Plaintiff has also established a *prima facie* case of discrimination as to the failure to promote him to sergeant in 2007. Plaintiff does not have direct evidence of antimilitary animus with respect to these promotional decisions. It is undisputed that it was former-Chief Bogan who recommended the permanent appointment of Jay Warren and James Thompson in August 2007, and that Chief Christler was not hired until 2008. (Dkt. 42–7 at 4:16–23; Dkt. 42–10 at ¶ 6). Plaintiff has offered no evidence that Chief Bogan harbored antimilitary animus. The undisputed evidence shows that the provisional appointments of Jay Warren and James Thompson occurred before Plaintiff was employed by the NPD (Dkt. 42–7 at 30:1–7; Dkt. 42–9 at 10:22–12:9), and there

is no dispute that Chief Bogan believed that if a provisional appointee was reachable on the Certificate of Eligibles, the appointment should be made permanent. (Dkt. 45 at ¶ 9). Although Plaintiff disagrees with Chief Bogan's opinion (and, as discussed below, there are legitimate reasons for this disagreement), there is no evidence in the record that it was not sincerely held or that it was a pretext for antimilitary animus.

■ Nevertheless, there is circumstantial evidence regarding the 2007 promotions from which a jury could find antimilitary animus. Discriminatory motivation on the basis of military status may be reasonably inferred from a variety of factors, including "'proximity in time between the ... military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.'" *Blais v. Bridgewell, Inc.*, No. 11–10100–DJC, 2012 WL 2577566, at *6 (D.Mass. July 3, 2012) (quoting *Conners v. Billerica Police Dep't.*, 679 F.Supp.2d 218, 226 (D.Mass. 2010)).

Here, the Village Board was aware of Plaintiff's military status—Plaintiff submitted a resume to the Village Board that referenced his military status and his military status was discussed in his interview. (Dkt. 42–12 at 2; Dkt. 45–2 at 25:9–26:11). Plaintiff also alleges that he was away on military leave during the 2007 promotions.[4]

---

**4.** Plaintiff alleges that "during this time frame" (August 2007), he was attending a mandatory military school for two weeks.

(Dkt. 45–2 at ¶ 21–23). The meeting at which the permanent appointments for sergeant were made occurred on August 7, 2007.

Temporal proximity is relevant evidence of discriminatory motive. *See, e.g., Patton v. Target Corp.*, No. 03–CV–1722–BR, 2007 WL 894560, at *7 (D.Or. Mar. 21, 2007) (genuine issues of material fact as to US-ERRA claim in part because plaintiff learned about his demotion on the morning of his return from military leave).

However, the most compelling evidence in support of a *prima facie* case concerning the 2007 promotion is the inconsistency between the proffered rationales for not having promoted Plaintiff in 2007 and for not having promoted Plaintiff in 2009. Plaintiff was purportedly not promoted in 2009 because he did not score the highest on the civil service exam. Yet, in 2007, when Plaintiff did score the highest on the civil service exam, he also was not promoted. Defendants attempt to dismiss this distinction as simply a difference in style between Chief Bogan and Chief Christler, claiming that Chief Christler did not make provisional appointments and that placement on the Certificate of Eligibles was therefore more relevant in 2009 than it had been in the past. However, Chief Bogan testified at his deposition that his general opinion was that "[p]rovisional appointments ... are a very dangerous road to go down for an administrator" and that it was the Village Board that decided to make provisional appointments rather than making appointments from the civil service list. (Dkt. 42–9 at 11:17–12:9; 13:8–13). As a result, there are disputed issues of fact as to whether the inconsistent emphasis placed on test placement was simply a difference in police chief preferences, or rather evidence of antimilitary animus.

Having placed first on the Certificate of Eligibles, but not even receiving an inter-

view for the open sergeant positions in 2007, while he was allegedly away attending mandatory military school, Plaintiff has presented circumstantial evidence from which a rational jury could infer that his military status played a part in the decision not to promote him to the position of sergeant in 2007.

### c. Plaintiff's Educational Opportunity Claim

In addition to not having been promoted in 2007, 2008, and 2009, Plaintiff has identified various other instances in which he was purportedly denied the benefits of his employment due to his military status. This includes a claim that Plaintiff lost five vacation days and a raise in 2007 (Dkt. 45–1 at 17); a claim that Plaintiff was initially denied payment for testifying before a grand jury but was ultimately paid (Dkt. 45–2 at ¶ 48); a claim that Plaintiff was denied an educational opportunity (*id.* at ¶¶ 49–53); and a claim that the SRO position was eliminated in late 2010 (*id.* at ¶ 91, Dkt. 42–14 at ¶ 58). At oral argument on this motion, Plaintiff's counsel clarified that Plaintiff is not claiming damages for the loss of vacation days and the raise or for the delay in receiving pay for grand jury testimony, and that this evidence was offered as proof of improper motivation by Defendants.

As to the educational opportunity, Plaintiff claims that this constituted a separate adverse employment action that can form the basis of a USERRA discrimination claim. It is questionable whether this constituted a separate adverse employment action, particularly in view of the fact that the request was ultimately granted. However, viewing the facts in the light most favorable to Plaintiff, and because of its

(Dkt. 42–10 at ¶ 6). Although it is not entirely clear whether Plaintiff was on military leave when the permanent appointments were made, for purposes of this motion the Court will construe the facts in the light most favorable to Plaintiff and assume that this was the case.

finding with respect to Defendants' affirmative defense on this issue, the Court will assume for purposes of this discussion that Plaintiff has set forth *a prima facie case* of discrimination as to the denial of his tuition reimbursement request. Plaintiff testified at his deposition that the feedback he received from the Village Board stated that his tuition request was denied both because he was on military duty and because he already had a bachelor's degree. (Dkt. 45–2 at 58:2–9). It is also undisputed that Plaintiff was on military duty in August/September 2008, when his request was made. (Dkt. 42–10 at 38; Dkt. 42–14 at ¶ 38). Defendants' claim that they would have made the same decision regardless of Plaintiff's military status, as evidenced by their treatment of Officer Davis, is relevant to the second step of the inquiry, but not to whether Plaintiff has established a *prima facie* case of discrimination.

### d. Elimination of the SRO Position

 With respect to the elimination of the SRO position in late 2010, the record does not support the conclusion that Plaintiff has actually been denied any benefit of employment as a result of this action. Therefore, Plaintiff has not made out a *prima facie* case of discrimination as to this claim.

It is undisputed that Plaintiff has been on active military duty since 2009 (Dkt. 42–10 at ¶ 17), and that the SRO position was not eliminated until late 2010 (*id.* at ¶ 15). Plaintiff has not returned to active duty with the NPD since the elimination of the SRO position. (*Id.* at ¶ 17).[5] As such, there is no relevant point in time during which Plaintiff could have served as SRO even had the position still existed.

 Moreover, there is no evidence that if Officer Croft's military duty ended and he chose to return to the NPD, he would not be offered employment conditions comparable to those associated with the SRO position. *See Hogan v. United Parcel Serv.,* 648 F.Supp.2d 1128, 1145 (W.D.Mo.2009) (finding no USERRA violation where plaintiff's position was eliminated while he was on military leave and he was reemployed in a comparable position upon his return). Notably, USERRA's reemployment provisions only require that a veteran returning from military service "be placed in the position he would have attained but for his service (*or a comparable position for which he is qualified*)." *Evans v. MassMutual Fin. Grp.,* 856 F.Supp.2d 606, 613 (W.D.N.Y.2012) (emphasis added). It would not make sense for USERRA's non-discrimination provisions to require an employer to retain a service member's exact position when the reemployment provisions do not do so. Moreover, such a requirement would completely ignore the economic realities that employers face in readjusting their workforces.

A USERRA claim requires a redressable injury. For example, in *Woodard v. New York Health & Hospitals Corp.,* 554 F.Supp.2d 329 (E.D.N.Y.2008), *remanded in part on different grounds,* 350 Fed. Appx. 586 (2d Cir.2009), the court dismissed a USERRA claim for failure to give a raise because defendant had retroactively increased plaintiff's pay. *Id.* at 354. The court explained that the claim was moot because USERRA provides for injunctive relief, compensatory damages, and liquidated damages, but does not provide for punitive damage or statutory penalties. As such, no injury remained to be redressed. Similarly, in the present case,

---

**5.** Plaintiff's counsel confirmed at the oral argument of this motion held on April 15, 2014, that Plaintiff was still on active military duty and had not returned to work with the NPD.

Plaintiff has not sought injunctive relief and would not be able to show any entitlement to compensatory damages or liquidated damages because there is no evidence that he has lost any pay or benefits due to elimination of the SRO position. A jury simply could not conclude from the currently available evidence that Officer Croft has been injured in any way by the elimination of the SRO position, and so this allegedly adverse action cannot support a claim for discrimination. Defendants' motion for summary judgment is therefore granted as to Plaintiff's claim that the elimination of the SRO position violated 38 U.S.C. § 4311(a).

### .2. Defendants' Affirmative Defense

Defendants have also argued that they are entitled to summary judgment because the evidence establishes that they would have taken the same actions regardless of Plaintiff's military status. The claim that Defendants would have made the same decisions regardless of Plaintiff's military status is an affirmative defense, *see Gummo*, 75 F.3d at 106, and Defendants bear the burden of proof on this point. *See also* 38 U.S.C. § 4311(c)(1) ("An employer shall be considered to have engaged in actions prohibited under subsection (a) ... *unless the employer can prove* that the action would have been taken in the absence of [the relevant military status] ....") (emphasis added). Defendants have established this affirmative defense as to Plaintiff's educational opportunity claim, but not as to Plaintiff's claims that he was denied promotions.

#### a. The 2007 Promotions

 With respect to the 2007 promotions, Defendants argue that the Village Board permanently appointed Jay Warren and James Thompson as sergeants because they had been provisionally appointed and former-Chief Bogan believed that an individual who is provisionally appoint-

ed should receive a permanent appointment if he is reachable on the Certificate of Eligibles. (Dkt. 42–14 at ¶ 9). Chief Bogan's opinion was not binding on the Village Board and, in fact, it may not even be consistent with New York civil service law. *See City of Long Beach v. Civil Serv. Employees Ass'n, Inc.-Long Beach Unit*, 8 N.Y.3d 465, 475, 835 N.Y.S.2d 538, 867 N.E.2d 389 (2007) (Kaye, J., concurring in part and dissenting in part) ("Provisional workers have no preferential rights of permanent employment or of 'retention over those higher in eligibility.'") (quoting *Koso v. Greene*, 260 N.Y. 491, 495, 184 N.E. 65 (1933)). Chief Bogan's opinion as to the desirability of permanently appointing provisional employees does not justify entry of judgment in Defendants' favor.

#### b. The 2008 and 2009 Promotions

As to the appointment of Jay Warren as investigator in 2008, Defendants argue that Chief Christler made his recommendation and the Village Board accepted that recommendation because then-Sergeant Warren had already been provisionally appointed and Chief Christler was therefore "obligated" to recommend him for permanent appointment as long as he was reachable on the Certificate of Eligible. The sole "evidence" provided by Defendants on this point is Chief Bogan's opinion that an individual who is provisionally appointed should receive a permanent appointment if he is reachable on the Certificate of Eligibles. (Dkt. 42–13 at 13–14). Neither Chief Christler nor the Village Board was bound by Chief Bogan's opinion, and the Court *cannot determine on the current record* that Defendants have met their affirmative defense burden with respect to the 2008 decision not to promote Plaintiff.

With respect to the 2009 sergeant appointments, Defendants argue that Officers Davis and Patton were promoted be-

cause they finished higher on the civil service exam than Plaintiff and because Chief Christler recommended them to the Village Board based on thorough interviews. Although it is undisputed that Officers Davis and Patton were first and second on the Certificate of Eligibles, this certainly did not obligate Chief Christler to recommend them for promotion or obligate the Village Board to accept those recommendations. The purpose of having a Certificate of Eligibles, rather than simply giving a civil service position to the individual who scored highest on the test, is to allow the decision-maker to take into account other relevant factors and qualifications. Indeed, the record conclusively demonstrates that placement on the Certificate of Eligibles had not been the deciding factor in past promotional decisions. Moreover, the fact that Chief Christler interviewed the candidates and provided recommendations to the Village Board is no evidence at all of lack of bias in the process, given that Chief Christler is the individual who allegedly harbored antimilitary animus. Defendants simply have not demonstrated, on the record before the Court, that they would have made the same decision without regard to Plaintiff's military status. Defendants are therefore not entitled to summary judgment as to Plaintiff's failure to promote claims in 2008 and 2009 based on their affirmative defense.

### c. The Educational Opportunity Claim

Defendants have met their burden of demonstrating that they would have made the same decision with respect to Plaintiff's tuition reimbursement request regardless of his military status. It is undisputed that Officer Davis, who has no military experience, submitted a request for tuition reimbursement to seek his Master's degree at Keuka College at or about the same time as Officer Croft submitted his request, that the Village Board also denied Officer Davis's request, and that Officer Croft and Officer Davis grieved the denial of their requests together. (Dkt. 42–11 at ¶¶ 14, 17; Dkt. 45–3 at 59:6–11, 60:10–61:7). The identical treatment of a non-military employee establishes that the same decision would have been made regardless of Plaintiff's military status. *See Escher v. BWXT Y–12, LLC,* 627 F.3d 1020, 1030 (6th Cir.2010) (affirming grant of summary judgment where only other employee who engaged in similar conduct to military employee was also terminated); *Ortiz Molina v. Rimco, Inc.,* No. Civ. 05–1181(JAF), 2006 WL 2639297, at *4 (D.P.R. Sept. 13, 2006) (granting summary judgment because defendant treated a non-military employee in the same manner as plaintiff with respect to managerial assignments). Because Defendants have established that they would have denied Plaintiff's tuition reimbursement request regardless of his military status, Defendants' motion for summary judgment is granted as to Plaintiff's educational opportunity claim. *See Landolfi v. City of Melbourne, Fla.,* 515 Fed.Appx. 832, 835 (11th Cir.2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 239, 187 L.Ed.2d 260 (2013) (affirming grant of summary judgment where plaintiff established *prima facie* case that his military status was factor in promotional decisions, but employer presented sufficient evidence that it would not have promoted him even absent the improper motivation).

### B. Plaintiff's Claims of Retaliation in Violation of 38 U.S.C. § 4311(b)

Plaintiff also claims that Defendants retaliated against him in violation of 38 U.S.C. § 4311(b) by eliminating the SRO position because Plaintiff asserted his rights under USERRA. To succeed on a retaliation claim under USERRA, Plaintiff "must demonstrate that [his] exercise of

[his] USERRA rights was 'a motivating factor in [Defendants'] action, unless [Defendants] can prove that the action would have been taken in the absence of [Plaintiff's] USERRA complaints." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir.2006) (quoting 38 U.S.C. § 4311(c)(2)).

The record in this case indicates that in October 2008, Plaintiff allegedly informed Chief Christler that he believed he had not been promoted to investigator due to his military status and that he believed this was a violation of USERRA. (Dkt. 42–11 at ¶ 11; Dkt. 45–2 at ¶¶ 43–45). Although it is not entirely clear from the parties' papers, at oral argument on this matter, Plaintiff's counsel suggested that this conversation with Chief Christler serves as the protected activity that forms the basis for Plaintiffs retaliation claim.

■ Based on the evidence presented to the Court, no rational jury could find that the elimination of the SRO position in late 2010 was in retaliation for Plaintiff's alleged assertion of his rights under USERRA in October 2008. There is no evidence in the record connecting these two events, and the sheer length of time between them seriously undermines any claim of retaliatory motive. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir.1999) (two year gap is "too wide to support the inference" of retaliation); *Diello v. Potter*, 697 F.Supp.2d 410, 414 (W.D.N.Y.2010), *aff'd*, 413 Fed.Appx. 344 (2d Cir.2011) (lengthy time period between protected activity and alleged retaliation did not suggest a causal connection). Here, Chief Christler would have immediately been aware of the protected activity, yet the purportedly retaliatory action took place approximately two years later.

Moreover, and as discussed above, the record does not contain evidence that Officer Croft has actually been damaged by the elimination of the SRO position. A service member claiming retaliation under § 4311(b) must show that he suffered a "materially adverse" employment action "such as termination, demotion accompanied by a loss of pay, or a material loss of benefits or responsibilities that significantly alters the terms [and] conditions of his employment." *Gross*, 636 F.3d at 892 (quotation omitted); *see also Lisdahl*, 633 F.3d at 720–721 ("[T]he anti-retaliation protections of USERRA do not provide a remedy for trivial harms" because "USERRA's anti-retaliation provision expressly limits actionable harm to 'adverse employment action. . . .' "). The elimination of the SRO position did not change the terms and conditions of Plaintiff's employment because Plaintiff has not been on active duty with the NPD since the SRO position was eliminated. Therefore, the elimination of the SRO position cannot be considered an adverse employment action under 38 U.S.C. § 4311(b).

Plaintiff's counsel suggested at oral argument that other allegedly adverse actions against Plaintiff may have been the result of retaliatory motives. However, the amended complaint identifies only the elimination of the SRO position as having been retaliatory. (Dkt. 13 at ¶¶ 89–94). Plaintiff also has not presented any evidence to the Court tending to show that any other adverse actions were taken in retaliation for his assertion of his rights in October 2008. As such, Defendants are entitled to summary judgment as to Plaintiff's claim for retaliation under 38 U.S.C. § 4311(b).

### CONCLUSION

For the foregoing reasons, the motion for summary judgment is denied as to Plaintiffs' claims against defendants the Village of Newark and Chief Christler in

his individual capacity for violation of 38 U.S.C. § 4311(a) with respect to the promotional decisions in 2007, 2008, and 2009. The motion for summary judgment is granted in all other respects. The Clerk of Court is directed to amend the caption of this case to reflect the dismissal of defendants the Village of Newark Police Department and Chief Christler in his official capacity.

SO ORDERED.